CORP. OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, demandantes y peticionarios, *v.* JAIME L. PURCELL, HUYKE COLÓN & OLABARRIETA, INC. y OTROS, demandados y recurrido el primero.

*Número:* CE-85-506     *Resuelto:* 30 de junio de 1986

716

718

*Pedro J. Córdova,* abogado de los peticionarios; *Athos R. Castro Cros,* abogado del recurrido.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

Al sobrevenir la ruina, por graves defectos estructurales, de la capilla que la Iglesia demandante hizo construir por los arquitectos Huyke & Olabarrieta y el contratista Purcell, aquella instó acción decenal contra éstos fundada en el Art. 1483 del Código Civil, 31 L.P.R.A. sec. 4124. Después de un somero descubrimiento de prueba que incluyó el intercambio de informes periciales, el codemandado contratista Purcell solicitó sentencia sumaria desestimatoria de la demanda. Basó su solicitud en que los informes periciales que acompañó con la moción indicaban que la ruina del edificio se debió a "movimientos o desplazamientos del terreno en el área del edificio, los cuales pueden atribuirse a la presencia en el área del edificio de suelos con características expansivas, [los cuales]

experimentan cambios volumétricos como consecuencia de alteraciones en su contenido de humedad asociados con períodos de lluvia y sequía". También acompañó con la moción una declaración jurada suya en la cual aseveró que "no tenía conocimiento alguno, ni existía razón alguna para que lo tuviere, de las condiciones del subsuelo en que se construyó el edificio".

Basándose en la moción de sentencia sumaria y los documentos que la acompañaron, la sala de instancia concluyó que en efecto la causa *primordial* de los vicios fue la condición del suelo; que el contratista codemandado Purcell no tenía conocimiento de esto, ni existía razón alguna para que lo tuviera, y que los daños "comenzaron a surgir y a apreciarse después de haberse terminado y aceptado la construcción". Fijó responsabilidad exclusiva en el arquitecto y desestimó la demanda en cuanto al contratista.

Recurrió ante nos la corporación dueña de la obra y requerimos del contratista codemandado Purcell mostrar causa por la que no debe revocarse la sentencia sumaria parcial dictada y devolverse el caso para ulteriores procedimientos. El contratista codemandado ha comparecido, su comparecencia no nos persuade. Al amparo de la Regla 50 de nuestro Reglamento, procedemos a resolver según lo intimado.

## I

*Normas generales aplicables a la sentencia sumaria—Regla 36* (¹)

La Regla 36.3 de las de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III, R. 36.3), (²) dispone que el tribunal podrá

---

(¹) La Regla 36 proviene de la Regla 56 de las de Procedimiento Civil federal.

(²) La Regla 36.3 de Procedimiento Civil dispone:

"La moción se notificará a la parte contraria con no menos de diez (10) días de anticipación a la fecha señalada para la vista. Con anterioridad al día de la vista, la parte contraria podrá notificar contradeclaraciones jura-

dictar sentencia sumaria "si las alegaciones, . . . [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria. . . . Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito".

■ La sentencia sumaria tiene como propósito aligerar la tramitación de un caso permitiendo que se dicte sentencia sin necesidad de que se tenga que celebrar la vista en los méritos, cuando de los documentos no controvertidos que se acompañan con la solicitud surge que "no existe una legítima disputa de hecho a ser dirimida, . . . sólo resta aplicar el derecho", *Roth* v. *Lugo*, 87 D.P.R. 386, 392 (1963); *Despiáu* v. *Pérez*, 76 D.P.R. 123 (1954) y "no se ponen en peligro o se lesionan los intereses de las partes". *Philip Morris, Inc.* v. *Tribunal Superior*, 103 D.P.R. 207, 216 (1975). Cuando exista duda sobre la existencia de una controversia ésta debe resolverse contra la parte que solicita la sentencia sumaria. *Valcourt Questell* v. *Tribunal Superior*, 89 D.P.R. 827, 832 (1964); *Roth* v. *Lugo*, supra. La sentencia sumaria es un remedio extraordinario que sólo debe ser concedido cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de las alegaciones que no hayan sido refutadas por la evidencia presentada con la moción. *Mandel* v. *United States*, 719

---

das. La sentencia solicitada se dictará inmediatamente si las alegaciones, disposiciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Podrá dictarse sentencia sumaria de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito."

F.2d 963, 965 (8vo Cir. 1983); *Portis* v. *Folk Const. Co., Inc.*, 694 F.2d 520, 522 (8vo Cir. 1982); *Everhart* v. *Drake Management, Inc.*, 627 F.2d 686, 690 (5to Cir. 1980); *Roth* v. *Lugo*, supra, pág. 397; 10A *Wright, Miller & Kane, Federal Practice and Procedure* Secs. 2725 y 2727 (2da ed. 1983). La sentencia sumaria sólo debe dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes. *Roth* v. *Lugo*, supra, pág. 397. Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. Si se cruza de brazos corre el riesgo de que le dicten sentencia en su contra sin la celebración de un juicio en su fondo. Sin embargo, el solo hecho de no haberse opuesto con evidencia que controvierta la presentada por el promovente no implica que necesariamente proceda la sentencia sumaria o que el promovente tenga derecho a que se dicte a su favor. *Flores* v. *Municipio de Caguas*, 114 D.P.R. 521 (1983); *Wright, Miller & Kane, op. cit.*, Sec. 2739; J. Cuevas Segarra, *Práctica Procesal Puertorriqueña*, San Juan, Pubs. J.T.S., 1985, Vol. II, Cap. V.

▮ Todos los hechos presentados en los documentos que acompañen la moción deben verse de la forma más favorable para la parte que se opone a la moción, concediendo a esta parte el beneficio de toda inferencia que razonablemente se pueda derivar de ellos. *Portis* v. *Folk Const. Co. Inc.*, supra, pág. 522; *Howard* v. *Russell Stover Candies, Inc.*, 649 F.2d 620, 623 (8vo Cir. 1981); *Jorge* v. *Universidad Interamericana*, 109 D.P.R. 505 (1980); Cuevas Segarra, *op. cit.*, pág. 188. A los fines de considerar una moción de sentencia sumaria hay que presumir ciertos todos los hechos no controvertidos que se hacen constar en los documentos y declaraciones juradas admisibles que se acompañan con la moción. *Municipio* v. *Tribl. Superior*, 78 D.P.R. 816, 821 (1955). Sin em-

bargo, debe tenerse presente que en un procedimiento de sen-tencia sumaria las declaraciones juradas que contienen sólo conclusiones, sin hechos específicos que las apoyen, no tienen valor probatorio, siendo, por lo tanto, insuficientes para de-mostrar la existencia de lo que allí se concluye. Regla 36.5 de las de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III, R. 36.5) ; ([3]) *Roslindale Co-op Bank* v. *Greenwald*, 638 F.2d 258, 261 (1er Cir. 1981) ; *MAPCO Inc.* v. *Carter*, 573 F.2d 1268, 1282 (Temp. Emer. Ct. App. 1978) ; *United States* v. *W. H. Hodges & Co., Inc.*, 533 F.2d 276, 278 (5to Cir. 1976) ; *Broadway* v. *City of Montgomery Alabama*, 530 F.2d 657, 658 (5to Cir. 1976) ; *Benton-Volvo-Metairie, Inc.* v. *Volvo Southwest, Inc.*, 479 F.2d 135, 139 (5to Cir. 1973) ; *Bsharah* v. *Eltra Corp.*, 394 F.2d 502, 503 (6to Cir. 1968) ; *Woods* v. *Allied Concord Financial Corporation (Del.)*, 373 F.2d 733 (5to Cir. 1967).

■ Una vez sometida una moción desestimatoria de sen-tencia sumaria y su oposición, el tribunal debe analizar todos los documentos que acompañan ambas mociones y determinar no sólo si el oponente controvirtió algún hecho material, sino

---

([3]) Dispone la Regla 36.5 que:

"Las declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal del declarante. Contendrán aquellos hechos que serían admisibles en evidencia y demostrarán afirmativamente que el declarante está cualificado para testificar en cuanto a su contenido. Copias juradas o certificadas de todos los documentos, o de partes de los mismos a que se haga referencia en una declaración jurada, deberán unirse a la misma o notificarse junto con ésta. El tribunal podrá permitir que las declaraciones juradas se complementen o se impugnen mediante deposiciones o declaraciones juradas adicionales. Cuando se presente una moción solici-tando que se dicte sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las ase-veraciones o negaciones contenidas en sus alegaciones, sino que vendrá obli-gada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo aquellos hechos pertinentes a la controver-sia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. De *no hacerlo así*, se dictará en su contra la sentencia sumaria si procediere."

también si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos que se acompañan. Si el tribunal determina que algún hecho material ha sido controvertido por la parte opositora o que hay alegaciones afirmativas en la demanda que no han sido refutadas, debe denegar la solicitud. Bajo estas circunstancias existe una genuina controversia de hechos y la sentencia sumaria no procede. *Municipio* v. *Tribl. Superior,* supra, pág. 822. Tampoco puede dictarse sentencia sumaria cuando de los propios documentos que se acompañan con la moción surge una controversia real sobre algún hecho material, *Morales* v. *Junta Exam. de Ing.,* 99 D.P.R. 84, 90 (1970), o cuando como cuestión de derecho no procede. Regla 36.3, íd.

El tribunal sólo debe dictar sentencia sumaria cuando lo estime necesario. Regla 36.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.4. En el sano ejercicio de esta discreción no debe resolver sumariamente casos complejos o casos que envuelven cuestiones de interés público. *Kennedy* v. *Silas Mason Co.,* 334 U.S. 249 (1948) ; *Eccles* v. *Peoples Bank,* 333 U.S. 426 (1948) ; *Wright, Miller & Kane, op. cit.,* Sec. 2732.

## II

*Responsabilidad del contratista bajo el Art. 1483 del Código Civil*

En *Roselló Cruz* v. *García,* 116 D.P.R. 511 (1985), quedó resuelto por este Tribunal que el Art. 1483, íd., establece una presunción *juris tantum* de culpa por parte de los constructores y arquitectos cuando ocurre la ruina de un edificio por vicios de construcción o del suelo. Esta presunción resulta beneficiosa para el propietario porque sólo tiene que probar que la misma ha tenido lugar por vicio del suelo o de la dirección si quiere dirigir su reclamación contra el arquitecto, o por vicios de construcción o incumplimiento de las

condiciones del contrato si va a establecer su acción contra el contratista. También hicimos claro en *Roselló Cruz* v. *García, supra*, pág. 519, que "[p]ara librarse de responsabilidad el contratista, si se trata de vicios de la construcción, o el arquitecto, si se trata de vicios del suelo, [tiene la obligación de] probar mediante preponderancia de prueba que [la ruina] no se deb[e] a su intervención, sino que se trata de un caso de fuerza mayor, totalmente imprevisible e inevitable en los conocimientos y medios técnicos de la profesión".

Hay situaciones, sin embargo, en donde no es posible concretar a priori la causa de la ruina y la responsabilidad, o se dan "conjunciones" en su origen. Ante estos casos la jurisprudencia española ha admitido la solidaridad en orden a sostener la presunción de culpabilidad de arquitectos y constructores.(4) J. Herrera Catena, *Responsabilidades en la Construcción*, Granada, Ed. Gráficas del Sur, 1977, Vol. 2, pág. 131; J. Cadarso Palau, *La responsabilidad decenal de arquitectos y constructores*, Madrid, Ed. Montecorvo, 1976, pág. 309. A ellos les corresponde demostrar que no ocurrió la ruina por causa a él imputable (esto es, el contratista, por ejemplo, deberá demostrar que sucedió por causa imputable al arquitecto).

No obstante, lo cierto es que el deslinde de los conceptos de vicios del suelo, dirección y construcción no es nada fácil, V. Torralba Soriano, *Los vicios del suelo: reflexiones sobre el artículo 1.591 del Código Civil*, 23 An. Der. Civ. 123 (1970), y la dificultad de hacer una determinación a priori de las causas y responsabilidades de los daños "va

---

(4) En *Acevedo Hernández* v. *Viñas Sorbá*, 111 D.P.R. 633, 638 (1981), resolvimos que "[c]uando tanto el contratista como el arquitecto han contribuido al vicio decenal, cuando las causas del vicio se entremezclan hasta formar un todo indivisible, cada profesional es responsable por el todo; el contratista y el arquitecto son responsables *in solidum*. La diferenciación entre las causas no debe pesar sobre el perjudicado. La carga de la prueba corresponde a los presuntos deudores".

estrechamente ligada a la 'íntima trabazón' entre las funciones técnicas y las constructivas". Herrera Catena, *op. cit.*, pág. 134. Aún más, existen algunos supuestos en los cuales es posible que el constructor responda por vicios que pertenecen a la esfera de responsabilidad del arquitecto. [5] Situaciones como las siguientes pueden provocar que a causa de la conducta del contratista, hechos definidos como "vicios del suelo" queden bajo su responsabilidad: cuando el constructor conocía de los vicios del suelo y no se lo manifestó al arquitecto; seguir construyendo cuando le constaba que el arquitecto no los había subsanado, o cuando se trata de vicios del suelo *groseros*, esto es, defectos que el contratista tenía el deber de conocer porque entran dentro de lo exigible a cualquier profesional de la construcción. [6]

---

[5] Véase *The Powerlite of P.R.* v. *C.R.U.V.*, 115 D.P.R. 654 (1984). Si bien en este caso no se trataba de una acción decenal ni discutimos el alcance de la responsabilidad del contratista cuando contribuye a la ruina, hicimos una descripción de la responsabilidad del arquitecto por planos defectuosos o vicios del suelo y los deberes del contratista cuando ello ocurre.

[6] J. Herrera Catena, *Responsabilidades en la Construcción*, Granada, Ed. Gráficas del Sur, 1977, Vol. 2, págs. 241–242:

". . . Aunque tales 'vicios' conciernen a la esfera de responsabilidad del Arquitecto, pudiera ocurrir que atrajeran, *excepcionalmente*, la del Constructor, en los siguientes supuestos: cuando los conociera y no se lo manifestara al Arquitecto; cuando continuara una construcción, constándole que el facultativo no los había subsanado, o en caso de vicios del suelo *groseros*.

"Ciertamente, se trata de una hipótesis *excepcional*; pero que estimamos pudiera resolverse, en nuestro Ordenamiento, responsabilizando al contratista con base en el art. 1.258 C.c.; donde se establece que los contratos obligan 'también a todas las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley'. Pues: ¿acaso no quedarían claramente incardinadas en este precepto conductas del contratista tales como las de no manifestar al Arquitecto unos vicios que conocía o seguir construyendo constándole, que éste no los había subsanado? Pero es que, además, cuando la posibilidad de conocerlos entra dentro de lo exigible por la 'lex artis' (a cualquier profesional de la Construcción) la conducta del contratista puede subsumirse en el concepto 'vicios de la construcción', sin perjuicio de que los hechos implicaran, al mismo tiempo, 'vicio del suelo'. En una palabra: se darían, en tales supuestos, la responsabilidad del contratista y del arquitecto." (Énfasis del original y escolio omitido.)

J. Sánchez Fontans, *El Contrato de Construcción*, Montevideo, Ed. M.B.A., 1953, T. II, págs. 339–340 n. 1.663.

■ El Derecho francés también se ha planteado otra situación; el problema de la responsabilidad por razón de vicios de construcción y su posible imputación al arquitecto. Véase a Herrera Catena, *op. cit.*, págs. 202–203 (citando a Bricmont, *La Responsabilité des Architectes et Entrepreneurs en Droit Belge et en Droit Français*). En la jurisprudencia española se ha suscitado igual problema. Torralba Soriano, *op. cit.*, pág. 129 n. 14.

De todo lo anteriormente expuesto se puede colegir que la fijación de cuál ha sido la causa de la ruina y quién es responsable puede resultar difícil por tratarse de hechos y conceptos altamente técnicos y complejos, usualmente entrelazados entre sí.

### III

*Aplicación de la norma de sentencia sumaria a la luz de lo dispuesto en el Art. 1483 del Código Civil*

■ Si enjuiciamos la sentencia sumaria dictada en este caso a la luz de las normas procesales y de derecho sustantivo antes enunciadas, la sala sentenciadora no debió haberla dictado. Para sostener su moción de sentencia sumaria desestimatoria el contratista codemandado Purcell acompañó los informes de varios peritos y su propia declaración jurada. La parte demandante se opuso oportunamente a la moción de sentencia sumaria. Sin embargo, al así hacerlo descansó en simples alegaciones, no acompañó evidencia, documentos o contradeclaraciones juradas, para controvertir la evidencia presentada por el codemandado Purcell. Regla 36.5, *supra; Flores* v. *Municipio de Caguas*, supra. Las alegaciones por sí solas no suscitan ninguna controversia de hechos. *Sánchez* v. *De Choudens,* 76 D.P.R. 1, 7 (1954).

Un cuidadoso estudio y análisis de los documentos sometidos con la moción refleja que de ellos no se puede inferir que la causa de los daños o la ruina de la iglesia fue los defectos

del suelo; tampoco surge que no existan circunstancias en las que se le pueda atribuir al codemandado contratista Purcell responsabilidad por la ruina. Aunque se pudiese concluir que la ruina se debió sólo a los defectos de suelo, de los informes periciales no surgen las razones por las cuales el contratista Purcell no debió haber conocido de éstos, o que no debió haber tomado medidas para evitar los daños. Sobre esta controversia el tribunal sólo tuvo ante sí la declaración jurada del propio codemandado Purcell, que contenía únicamente una aseveración conclusiva carente de hechos específicos en los cuales apoyarse. Esta declaración carece de valor probatorio. Bajo estas circunstancias no se puede sostener la procedencia de una moción de sentencia sumaria desestimatoria de la acción contra el codemandado contratista Purcell. Tenemos que concluir que el tribunal no tenía toda la verdad, sobre los hechos pertinentes ante sí para poder llegar a una determinación sobre la causa de la ruina y la negligencia en este caso.

Por ser la responsabilidad del contratista y del arquitecto de orden público, cuya determinación requiere el análisis detenido y minucioso de los hechos, y de complejas cuestiones técnicas, las acciones para establecer responsabilidad al amparo del Art. 1483, *supra*, no son el tipo de caso que de ordinario deba resolverse por sentencia sumaria, sin que las partes hayan tenido la oportunidad de presentarle al tribunal todos los hechos en una vista en los méritos. La sentencia sumaria en estos casos sólo debe proceder cuando se le demuestre al tribunal que un juicio en su fondo no es necesario, que tiene ante sí, de forma incontrovertible, toda la verdad, todos los hechos necesarios para poder resolver la controversia conforme a derecho. Esta no es la situación en el caso de autos. De los documentos que acompañan la moción de sentencia sumaria, informes periciales, declaración jurada, y contestación a los interrogatorios, no surgen hechos admisibles que de forma incontrovertible demuestren que la parte

demandante no tenía, bajo cualesquiera de las teorías de derecho previamente discutidas, derecho a recobrar del codemandado contratista Purcell al amparo del Art. 1483 del Código Civil, *supra*.

El sistema de atribución de responsabilidad sobre el constructor y el arquitecto se basa en la existencia de culpa o negligencia, a pesar de que el resultado no se manifieste de inmediato, sino dentro del término de diez (10) años que fija el Art. 1483, *supra*. En este sentido se ha manifestado la generalidad de la doctrina. Torralba Soriano, *op. cit.*, pág. 136; G. García Cantero, *La responsabilidad por ruina de los edificios ex Art. 1.591 del Código Civil*, 16 An. Der. Civ. 1053, 1104–1105 (1963). Sin embargo, la exigencia de la prueba de la culpa, cuya carga según las normas generales de responsabilidad extracontractual correspondería al actor, está mitigada por la presunción de culpabilidad del contratista y arquitecto que establece el Art. 1483, *supra*. Esta presunción *juris tantum* se basa en el interés público que inspira la norma del precitado artículo y en la dificultad de la prueba si el perjudicado tuviese el peso de la prueba de la culpa del autor del daño. García Cantero, *op. cit.;* Torralba Soriano, *op. cit.*, pág. 136. De acuerdo con las normas procesales anteriormente discutidas este tipo de caso, de ordinario, no debe resolverse por sentencia sumaria.

En el caso ante nos el contratista codemandado apoyó su moción de sentencia sumaria en informes periciales altamente técnicos y en una declaración jurada que contenía meras alegaciones conclusorias de que no conocía ni tenía por qué conocer las condiciones del suelo. No adujo hechos específicos para sostener estas alegaciones. Tampoco presentó prueba excluyente de que la ruina del edificio no se debiera, por lo menos en parte, a vicios de construcción o a acciones u omisiones de su parte. La sala de instancia al evaluar la prueba y dictar la sentencia sumaria parcial desestimatoria de la acción contra el

codemandado contratista Purcell, concluyó basándose en el informe pericial de los ingenieros geotécnicos Vázquez Agrait y Vázquez Agrait que los daños sufridos por el edificio fueron causados *"primordialmente* por la susceptibilidad del subsuelo para absorber o ser afectado por las lluvias". (Traducción nuestra.) ([7]) Esta conclusión obviamente no descarta la posible intervención de otras causas de la ruina, ni despeja toda controversia sobre el hecho de la responsabilidad por la negligencia. Bajo estas circunstancias no procedía la desestimación de la acción contra el contratista. El caso tenía que resolverse luego de un juicio plenario.

*Se expide el auto, se dictará sentencia en la que se revoque la sentencia parcial recurrida y se devuelve el caso para la continuación de los procedimientos compatibles con esta opinión.*

El Juez Asociado Señor Negrón García concurre sin opinión escrita. El Juez Asociado Señor Hernández Denton no intervino.

---

([7])A la pág. 13 del informe pericial de Vázquez Agrait & Vázquez Agrait, se dice:

"Based on the present geotechnical evaluations it is concluded that the damages to the existing Florida Fort Lauderdale Mission at Ponce, have been brought about *primarily* by the susceptibility of the underlying soils to swell and shrink upon being wetted and/or dried." (Énfasis suplido.)