CELESTINA CUADRADO LUGO y OTROS, demandantes y recurridos, *v.* JUAN ANTONIO SANTIAGO RODRÍGUEZ, HATO REY PSYCHIATRIC HOSPITAL, INC. y OTROS, demandados y recurrentes.

*Número:* RE-88-175          *Resuelto:* 30 de abril de 1990

*Jaime Otero García,* abogado de los recurrentes; *Héctor G. Oliveras,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

En el presente recurso los demandantes recurridos, Celestina Cuadrado Lugo, Carlos Vega Cruz, Luz Celenia Vega Cuadrado, Isabel Vega Cuadrado, Carlos Vega Cuadrado, William Vega Cuadrado, Ángel Luis Vega Cuadrado, Virginia Cuadrado Lugo y Ana Margarita Vega Cuadrado (madre, padre y hermanos, respectivamente, de las víctimas), presentaron una demanda en daños y perjuicios contra Juan Antonio Santiago Rodríguez y el Hato Rey Psychiatric Hospital, Inc. (en adelante el Hospital).

Los promoventes alegan que el 20 de noviembre de 1982 y como a las 10:15 P.M., en el pueblo de Las Piedras, Juan Antonio

Santiago mató con un revólver a las jóvenes María Milagros y Lourdes María Vega Cuadrado sin que mediara provocación o negligencia de clase alguna de parte de las perjudicadas. Se alegó, además, que al momento de los hechos Don Juan Antonio era paciente del Hospital y que dicha institución fue negligente al permitirle que se escapara y cometiera los dos (2) asesinatos, por lo que ésta es solidariamente responsable a los demandantes recurridos por los daños sufridos.

En su contestación, el Hospital negó las alegaciones y levantó como defensa afirmativa que:

(1) El día de los hechos el paciente se encontraba recluido y bajo la custodia de la aquí compareciente, (2) y aunque se hubiera escapado, lo cual se niega específicamente, éste no tenía tendencias homicidas ni conllevaba peligrosidad por lo cual los actos cometidos no eran previsibles para la aquí compareciente y por lo tanto no conllevaban responsabilidad de ésta.(1)

Más tarde, el Hospital presentó moción de sentencia sumaria en la que alegó que aun en la presunción de que fuesen ciertos los hechos relatados en la demanda, ellos no eran responsables ante los demandantes recurridos.

Luego de varios incidentes procesales, los demandantes recurridos presentaron, el 15 de diciembre de 1987, oposición a la sentencia sumaria y moción de sentencia sumaria.(2) En estos escritos se alegó, en síntesis, que mientras estaba Juan Antonio Santiago recluido en el Hospital, éste se escapó y mató a María Milagros y a Lourdes María Vega Cuadrado, por lo cual el

---

(1) El codemandado Juan Antonio Santiago fue hallado culpable por los crímenes mediante veredicto de jurado. La sentencia fue apelada pero, mientras el recurso se hallaba pendiente, el acusado-convicto se suicidó ahorcándose. Por ello, conforme a lo resuelto en el caso *Pueblo v. Morales Díaz*, 120 D.P.R. 249 (1987), se desestimó la apelación y se ordenó al Tribunal Superior, Sala de Humacao, que procediese a ordenar el sobreseimiento y archivo de la sentencia y de las acusaciones.

(2) En cuanto a las sentencias sumarias es importante mencionar lo siguiente: El Hato Rey Psychiatric Hospital, Inc. (en adelante el Hospital) presentó la suya primero y luego los demandantes presentaron una oposición y, a su vez, solicitaron sentencia sumaria a su favor fundándose en la evidencia documental sometida por el Hospital y en otra sometida junto a su escrito. *El Hospital no replicó a la oposición de los demandantes ni a la solicitud de sentencia sumaria allí contenida.*

Hospital fue negligente y debe responderle a los demandantes recurridos por los daños sufridos.

Luego de los trámites de rigor y de celebrar una vista, el tribunal dictó sentencia parcial y denegó la moción de sentencia sumaria del Hospital y declaró con lugar la sentencia sumaria de los demandantes recurridos. Le impuso responsabilidad al Hospital y dispuso que se señalara una vista para determinar la cuantía de los daños. El tribunal determinó que no había controversia sustancial sobre los hechos siguientes:

1. El día 20 de noviembre de 1982, como a eso de las 10:15 P.M., en el pueblo de Las Piedras, Puerto Rico, Juan Antonio Santiago Rodríguez (el paciente) mató de disparos de revólver a María Milagros Vega Cuadrado y Lourdes María Vega Cuadrado. No hubo negligencia de las occisas.

2. El paciente se fugó del Hospital en algún momento después del turno de enfermeras del Hospital que terminó a las 3:00 de la tarde del 19 de noviembre de 1982, última entrada sobre tratamiento que aparece en el récord hospitalario del paciente hasta el 26 de diciembre de ese año.

3. El paciente se fugó por negligencia del Hospital.

4. Las occisas eran hijas de dos de los co-demandantes y hermanas de los otros siete.

5. Juan Antonio Santiago Rodríguez (el paciente) estuvo ingresado en el Hospital en tres ocasiones distintas; 16 de julio de 1981 al 28 de agosto de 1981; 25 de marzo de 1982 al 8 de junio de 1982; 9 de octubre de 1982 al 12 de diciembre de 1982.

6. El paciente fue admitido en dichas ocasiones por el Hospital como referido por el Fondo del Seguro del Estado para ser ingresado como paciente psiquiátrico.

7. El paciente al ser ingresado en el Hospital vino acompañado siempre por un familiar y en ocasiones venía amarrado con sogas y/o con esposas en sus muñecas.

8. El Dr. R.L. Rivera Toledo, psiquiatra del Fondo del Seguro del Estado al referir el paciente al Hospital expresó que entendía que necesitaba tratamiento a nivel institucional lo antes posible, ya que se podía hacer daño a sí mismo o a otras personas.

9. El Hospital tuvo que tomar medidas de restricción del paciente en múltiples ocasiones porque se violentaba, se tornaba agresivo, hostil y explosivo. El récord hospitalario está plagado de las tendencias agresivas y hostiles del paciente.

10. El paciente intentó hacerle daño a otras personas, incluyendo a su madre, a sus hermanos, y hasta a su propio psiquiatra en el Hospital, el Dr. Antonio De Thomas, todo lo cual es del conocimiento del Hospital, pues surge de sus propios récor[d].

11. También surge de los récor[d] del Hospital que el paciente tenía tendencias a causarse daño a sí mismo, tendencias las cuales el Hospital definió como suicidas.

12. En ocasiones el Hospital le concedía pases al paciente pero acompañado siempre de un familiar autorizado según los récor[d] del Hospital.

13. En la primera y en la última hospitalización no regresó del pase que se le concedió sin que hubiere sido dado de alta. Esto surge de un registro de pases separado e independiente que aparece en los récor[d] del Hospital ajeno a las órdenes médicas y notas de progreso.

14. El día 11 de noviembre de 1982, nueve días antes de las muertes, un psiquiatra del Hospital ordena se continúe la hospitalización del paciente por sesenta (60) días más para continuar su tratamiento.

15. El día 18 de noviembre de 1982, dos días antes de la fecha de los asesinatos la madre del paciente advierte al Hospital que su hijo no estaba en condiciones de salir del Hospital.

16. El paciente solicitaba continuamente durante sus hospitalizaciones que lo dejaran abandonar el Hospital[,] peticiones que eran denegadas consistentemente por el Hospital, salvo los pases regulares que disfrutó cuando fue acompañado por sus familiares.

17. El récord de la vigilancia del Hospital por sus empleados revela que no hay garantías de que se pudiera evitar las ausencias clandestinas del paciente. Los pacientes sobornaban a sus enfermeros que los vigilaban para que los dejaran fugarse.

18. En el récord del Hospital para el período cuando se fugó el paciente, 20 de noviembre de 1982, no surge que personal del Hospital lo viera para ese día ni noche, ni para los días ni noches del 21, 22, 23, 24 y 25 del mes de noviembre de 1982.

19. En algún momento después de cometer los asesinatos el paciente regresó al Hospital sin que esa institución sepa hoy día c[ó]mo, ni cu[á]ndo.

20. El Hospital no informó a la Policía de Puerto Rico de la fuga del paciente. Apéndice I, págs. 3–6.

Expedimos auto para revisar dicha decisión. Revocamos.

I

■ La moción de sentencia sumaria tiene el objetivo de conseguir la terminación de un pleito sin la celebración de un juicio. Pero debemos reconocer, sin embargo, que aunque la moción de sentencia sumaria va dirigida a promover la adjudicación rápida y la economía procesal, el objetivo fundamental sigue siendo obtener una solución justa. *Cf.* Regla 1 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III).

■ La moción de sentencia sumaria obliga a presentar las pruebas que se utilizarán en el juicio para apoyar una alegación. Su efecto real es adelantar incidentes que podrían ocurrir en el juicio. A través de este mecanismo el tribunal puede considerar prueba que, de no ser adecuadamente refutada, permite que se disponga del pleito a favor de alguna de las partes.

■ El texto de la Regla 36.3 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III) dice que procede la sentencia sumaria "si las alegaciones, [deposiciones,] contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente".

■ Cuando existe una disputa de hechos *bona fide* no procede la sentencia sumaria (*Valcourt Questell v. Tribunal Superior*, 89 D.P.R. 827, 832 (1964)), y cualquier duda sobre la existencia de una controversia debe resolverse contra la parte que la solicita. Sólo procede dictarse en casos que resulten claros, o sea, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes. Pero los casos en que se plantea si hay o no negligencia (*Lasanta Piñero v. Retto, Inc.*, 100 D.P.R. 694, 698 (1972)) o en los que resulta importante determinar el estado mental (*García López v. Méndez García*, 88 D.P.R. 363, 380 (1963)), de ordinario no deben resolverse por la vía sumaria.

Acorde con el desarrollo procesal vivido, hemos sostenido que "[l]a sentencia sumaria es un remedio extraordinario que sólo debe ser concedido cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de las alegaciones que no hayan sido refutadas por la evidencia presentada con la moción" y que "[e]n el sano ejercicio de [su] discreción [el Tribunal] no debe resolver sumariamente casos complejos o casos que envuelven cuestiones de interés público". *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720 y 723 (1986). En este caso se dijo que para obtener una sentencia sumaria a su favor la parte codemandada tenía que presentar pruebas concretas que le eximiesen de su responsabilidad. Las que presentó no satisfacían este requisito. Eran únicamente aseveraciones conclusivas que carecían de valor probatorio. Las opiniones, para ser admisibles, tienen que descansar en hechos específicos. A este respecto indicamos:

> Una vez sometida una moción desestimatoria de sentencia sumaria y su oposición, el tribunal debe analizar todos los documentos que acompañan ambas mociones y determinar *no sólo si el oponente controvirtió algún hecho material, sino también si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos que se acompañan.* Si el tribunal determina que algún hecho material ha sido controvertido por la parte opositora o que hay alegaciones afirmativas en la demanda que no han sido refutadas, debe denegar la solicitud. Bajo estas circunstancias existe una genuina controversia de hechos y la sentencia no procede. *Corp. Presiding Bishop CJC of LDS v. Purcell*, supra, págs. 722–723.

Anteriormente, en *Padín v. Rossi*, 100 D.P.R. 259, 263–264 (1971), luego de sostener que "[u]sada con sabio discernimiento, la sentencia sumaria es un valioso mecanismo procesal para descongestionar los calendarios judiciales", resolvimos que al considerar una moción de esta naturaleza, los jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud y "[p]ueden y deben considerar todos los

documentos en autos, sean o no parte de la solicitud de sentencia sumaria, de los cuales surjan admisiones hechas por las partes".

■■■ En casos de daños y perjuicios, el demandante puede presentar una moción de sentencia sumaria con posibilidades de éxito si incluye prueba sobre todas las aseveraciones de la demanda que sean elementos indispensables de la causa de acción. A esos efectos, se requerirá prueba sobre la acción u omisión, la culpa o negligencia, la relación causal y el daño.(3) Si falta prueba sobre un elemento esencial no procede la sentencia sumaria. *Corp. Presiding Bishop CJC of LDS v. Purcell*, supra.

■■■ Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. Si se cruza de brazos, corre el riesgo de que le dicten sentencia en su contra sin la declaración del juicio en su fondo. Sin embargo, el solo hecho de no haberse opuesto con evidencia que controvirtiera la presentada por el promovente, no implica que necesariamente proceda la sentencia sumaria o que el promovente tenga derecho a que se dicte a su favor. *Flores v. Municipio de Caguas*, 114 D.P.R. 521 (1983).

## II

Luego de exponer el trasfondo doctrinal aplicable, pasemos a analizar la certeza de la decisión que declaró con lugar la moción de sentencia sumaria de los demandantes recurridos. El tribunal entendió que luego de examinar los autos del caso, los récord del Hospital sometidos en evidencia y las declaraciones juradas prestadas ante la Fiscalía, así como la supuesta admisión de negligencia del Hospital al permitir la fuga del codemandado, se

---

(3) Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Los daños no pueden valorarse ordinariamente a través de la moción de sentencia sumaria. Por vía de sentencia sumaria se dispone de la cuestión de responsabilidad y se celebra vista para valorar daños. Regla 36.4 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III).

eliminó cualquier controversia real sustancial en cuanto a los hechos, por lo que procedía dictar sentencia sumaria a favor de los demandantes recurridos.

■ Luego de examinar la totalidad de los autos, concluimos que los hechos no son tan claros y, por el contrario, hay varias controversias que no permiten dictar sentencia sumaria. En vista de que los demandados recurrentes no adujeron prueba adicional alguna en oposición a la sentencia sumaria, debemos determinar primeramente si en las declaraciones unidas a las respectivas mociones de sentencia sumaria se relacionan hechos demostrativos de la negligencia del Hospital y de que no hay controversia en cuanto a esto. La prueba para sustentar la moción de sentencia sumaria del Hospital consistió, entre otras cosas, en varias declaraciones juradas prestadas por algunos funcionarios del Hospital, quienes intentaban demostrar que éste, en todo momento, tomó las medidas previsoras requeridas. Por el contrario, las declaraciones juradas presentadas por los demandantes recurridos tenían el propósito de intentar demostrar que la mera actuación del Hospital y de sus funcionarios era de por sí negligente, por lo que se les debía responsabilizar solidariamente con el convicto-apelante. El resumen de hechos en las declaraciones de ambas partes no demuestra la negligencia o falta de ella tan claramente como pretenden las partes. Por otro lado, y del mismo modo, existen una serie de hechos (que pueden directa o indirectamente relacionarse con la negligencia alegada por los demandantes recurridos) que no están del todo claros en los documentos presentados. Ejemplo de ello son las declaraciones usadas por los demandantes recurridos en las que se alegaba que los enfermos sobornaban a los empleados para que los dejaran escapar, así como el hecho de si el señor Santiago Rodríguez era responsable por los delitos cometidos, ya que al momento de presentar el recurso ante nos el caso estaba bajo apelación. Recordemos que no procede dictar sentencia sumaria en casos donde existe una clara controversia de hechos, que sea real y sustancial, donde cualquiera de las teorías puede ser razonable-

mente sostenida. Es éste el caso ante nos. Para que una parte pueda promover exitosamente una sentencia sumaria tiene que establecer hechos que definitivamente le den la razón. Este no es el caso aquí.

■ En última instancia, debemos hacer claro que aun bajo la premisa de que en su moción de sentencia sumaria el Hospital aceptó haber sido negligente, esto no es determinante ni obliga a que se dicte sentencia sumaria en su contra. *Flores v. Municipio de Caguas,* supra.

■ Por otro lado, y no menos importante, es el hecho de que tampoco está claro la cuestión del nexo causal. De acuerdo con el derecho vigente, "para que exista responsabilidad por un daño causado por la negligencia de otro, es necesario que entre ésta y aquél exista una relación causal y para que exista esta relación causal es necesario que el daño ocasionado haya sido previsible y evitable de haberse realizado a tiempo la acción omitida. Puig Brutau, *op. cit.,* pág. 97. La dificultad estriba en poder precisar 'cuándo se da la relación de causalidad y cuáles son sus límites; cuándo deba estimarse que el hecho productor del daño es causa jurídica que según su naturaleza general aparezca como adecuada para engendrar ese daño' . . . especialmente cuando se trata de un daño que es el resultado de un acto delictivo de un tercero". *Elba A.B.M. v. U.P.R.,* 125 D.P.R. 294, 310 (1990). Véanse, además: *Estremera v. Inmobiliaria Rac, Inc.,* 109 D.P.R. 852, 859 (1980); *Rodríguez v. Colón Colón,* 103 D.P.R. 493, 501 (1975).

Al examinar la totalidad de la prueba en autos no podemos concluir que el nexo causal sea un hecho indisputado. Por el contrario, las partes tienen varias teorías distantes de ser semejantes unas a las otras.

■ Recordemos que, como antes hemos dicho, la "difícil determinación de cu[á]ndo existe un nexo causal entre el daño producido por un acto delictivo de un tercero y la omisión de cumplir con la obligación de tomar precauciones, medidas de seguridad y protección, no puede 'resolverse nunca de una

manera plenamente satisfactoria mediante reglas abstractas, sino que en los casos de duda ha de resolverse por el juez según su libre convicción, ponderando todas las circunstancias'. J. Castán Tobeñas, *Derecho Civil español, común y foral*, 10ma ed., Madrid, Ed. Reus, 1967, T. 3, pág. 195". *Elba A.B.M. v. U.P.R.*, supra, pág. 310. Es por esto que no podemos disponer de la controversia ante nos de manera sumaria.

En vista de lo expuesto, *concluimos que erró el tribunal de instancia al declarar con lugar la sentencia sumaria de los demandantes recurridos, por lo que se devuelve el caso para que en su día se celebre juicio en su fondo.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Rebollo López y la Juez Asociada Señora Naveira de Rodón concurren con el resultado sin opinión escrita. El Juez Asociado Señor Negrón García disiente sin opinión escrita.