# 98 DTA 137

TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA
PANEL I

ZACARIAS NAVARRO MORALES
Recurrido

v.

AYERST WYETH PHARMACEUTICALS, INC.
Peticionaria

Núm. KLCE-97-01286

San Juan, Puerto Rico, a 25 de marzo de 1998

Panel integrado por su Presidente, el Juez Brau Ramírez
el Juez Colón Birriel y la Juez Pesante Martínez

Colón Birriel, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

### I

La peticionaria, Ayerst Wyeth Pharmaceuticals, Inc., *("Ayerst")* solicita la revocación de una resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama, el 29 de octubre de 1997, en el caso que por *"Discrimen por Razón de Edad y Nulidad de Contrato"* que presentara Zacarías Navarro Morales *("Navarro Morales")* contra Ayerst. Mediante la referida resolución se declaró no ha lugar una solicitud de Ayerst, encaminada a que el foro de instancia dictara sentencia sumaria a su favor y desestimara la causa de acción presentada por Navarro Morales.

### II

Surge de la demanda presentada ante el foro de instancia, el 12 de septiembre de 1995, que Navarro Morales de 58 años de edad trabajó en Ayerst por espacio de nueve (9) años, desde el año 1985 hasta el 30 de noviembre de 1994. Tenía además de su sueldo beneficios de empleo, plan médico, dieciocho (18) días de vacaciones al año, veintidos (22) días de enfermedad anuales y aportación patronal al plan de retiro. Al momento de terminar en su empleo, se desempeñaba como Supervisor de Mantenimiento Mecánico. Además de él, había dos (2) supervisores de mantenimiento mecánico, menores que él de 52 años. El 13 de septiembre de 1994, representantes de Ayerst le informaron a Navarro Morales que iban a eliminar su plaza. El Jefe de Personal de Ayerst le informó que aceptara ciertos alegados beneficios, puesto que iba a quedarse sin su empleo de todas maneras. Ante esa situación, alegadamente Navarro Morales firmó de buena fe un relevo de responsabilidad a favor de Ayerst, ante la creencia de que su plaza iba a ser eliminada. Alegadamente su plaza no fue eliminada y fue sustituido por un empleado de 52 años, menor en edad, quien a su vez fue sustituido por otro empleado.

Navarro Morales continuó alegando que el consentimiento que prestó al firmar el relevo estuvo viciado y por tanto era inexistente. Que firmó dicho relevo bajo el fundado y racional temor, infundido por Ayerst, de que la plaza que ocupaba iba a ser eliminada y si no firmaba recibiría beneficios menores. De acuerdo a los beneficios provistos por Ayerst a sus empleados, de haber continuado trabajando por seis (6) meses adicionales hubiera recibido pensión y plan médico vitalicio. Perdió, además, 200 acciones que tenían un valor aproximado de $65 a $78 cada acción. Alegó, también, que a la fecha de la presentación de su reclamación, a pesar de sus gestiones, no le habían entregado el dinero que tenía acumulado en retiro.

Solicitó remedios, alegando que fue despedido en violación a la Ley 100 del 30 de junio de 1959, 29 L.P.R.A. sec. 146 *et seq.,* las secciones 1 y 8 del Artículo II de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, y los Artículos 1802 y 1213 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 5141 y 3391.

Por su parte, Ayerst contestó la demanda, aceptó algunas de las alegaciones y negó otras por falta de información u otras razones. Negó que el jefe de personal le informara a Navarro Morales que aceptara ciertos alegados beneficios y, de no aceptarlos, se iba a quedar sin su empleo de todas maneras, y que por esa situación éste firmó el relevo. Negó por falta de información el que dicho relevo hubiese sido firmado por Navarro Morales de buena fe ante la creencia de que su plaza de supervisor de mantenimiento mecánico iba a ser eliminada. Negó que la plaza de Navarro Morales no fuera eliminada y que éste fue sustituido por un empleado de 52 años, el que a su vez fue sustituido por otro empleado. Negó que el consentimiento de Navarro Morales al firmar el relevo estuviera viciado, etc. Aclaró que a Navarro Morales se le ofrecieron dos plazas como alternativas al retiro por reorganización de la empresa y éste rechazó ambas propuestas y que éste tuvo oportunidad de cambiar las acciones en lugar de perderlas y no lo hizo. Aceptó que Navarro Morales no se le había pagado el retiro, pero ello por éste no haber enviado firmado un documento que se había enviado para continuar el trámite del pago del cheque.

Alegó como defensas afirmativas, entre otras, que no se discriminó contra Navarro Morales, que éste firmó un relevo mediante el cual renunció a todas sus reclamaciones. La posición de Supervisor de Mantenimiento que éste ocupaba fue eliminada conforme a un plan de reorganización de la compañía y que éste no fue sustituido por empleado alguno, ya que su posición fue eliminada. Se le ofreció a Navarro Morales dos posiciones como alternativas para su retiro y éste las rechazó. El relevo de responsabilidad fue firmado libre y voluntariamente sin ningún tipo de intimidación.

Trabada la controversia, el 23 de enero de 1997, Ayerst presentó una *"Solicitud de Sentencia Sumaria"* interesando desestimar las reclamaciones de Navarro Morales. Alegó en esencia, que éste firmó un *"Relevo General"* a su favor renunciando a cualesquiera causas de acción relacionadas con su empleo en Ayerst, incluyendo aquellas surgidas bajo el derecho invocado. Alegó, además, que los hechos incontrovertidos en el caso establecían la validez del relevo firmado por Navarro Morales.

Por su parte, el 10 de febrero de 1997, Navarro Morales se opuso a la solicitud formulada por Ayerst, alegando, en esencia, que el relevo era nulo e inexistente porque *"medió coacción y dolo en el consentimiento"* que prestó al firmarlo. Para sustentar sus alegaciones de dolo y coacción, adujo que firmó el relevo *"bajo el temor de que si no lo firmaba perdía beneficios de los que era acreedor como empleado de Ayerst y que su plaza iba a ser eliminada"*. Continuó alegando que su plaza no fue eliminada, sino que fue reemplazado por un empleado más joven, Jorge Salas.

Así las cosas, el foro de instancia emitió su resolución de 29 de octubre de 1997, mediante la cual declaró no ha lugar la solicitud de sentencia sumaria.

Inconforme, Ayerst, recurre ante nosotros imputándole error al foro de instancia al declarar no ha lugar su moción de sentencia sumaria, no obstante el relevo general firmado por Navarro Morales, el que le impedía presentar sus reclamaciones.

Así las cosas, el 16 de enero de 1998 le ordenamos a Navarro Morales mostrar causa por la cual no debíamos revocar la resolución recurrida emitida por el foro de instancia el 21 de febrero de 1997, mediante la cual se declaró no ha lugar la *"Solicitud de Sentencia Sumaria"* presentada por Ayerst el 23 de enero de 1997, así como su resolución de 29 de octubre de 1997, declarando *"No Ha Lugar"* la *"Solicitud de Reconsideración"* de Ayerst de 13 de marzo de 1997.

Navarro Morales compareció en cumplimiento de nuestra resolución en escrito titulado *"Moción Solicitando la Desestimación de Petición de Certiorari"*. Por su parte, Ayerst solicitó prórroga para radicar réplica al escrito de Navarro Morales a lo que Navarro se opuso. Mediante nuestra resolución de 13 de marzo de 1997, declaramos no ha lugar a la primera y en cuanto a la segunda, nada que proveer.

Estando en condiciones de resolver así lo hacemos.

### III

En esencia, nos toca resolver si en efecto cometió error el foro de instancia al declarar no ha lugar la solicitud de sentencia sumaria de Ayerst, no obstante Navarro Morales haber firmado un relevo general válido en derecho que le impedía presentar sus reclamaciones contra ésta. Veamos.

La Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36, autoriza a un tribunal a dictar sentencia sumaria en un caso, cuando de los documentos y declaraciones sometidos en apoyo a la moción quedare demostrado que no existe controversia real sustancial en cuanto a ningún hecho material y que sólo resta aplicar el derecho. La sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito. *Guerrido García v. Universidad Central de Bayamón,* __ D.P.R. __ (1997), **97 J.T.S. 79,** a la pág. 1104; *P.F.Z. Properties Inc., v. General Accident Insurance Co.,* __ D.P.R. __ (1994), **94 J.T.S. 116,** a la pág. 125; *Consejo de Titulares del Condominio Parkside, etc. v. MGIC Financial Corporation,* __ D.P.R. __ (1991), **91 J.T.S. 54;** *Cuadrado Lugo v. Santiago Rodríguez,* 126 D.P.R. 272, 279-280 (1990); *Corp. of Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714, 720-721 (1986); *Nassar Rizek v. Salvador O. Hernández,* 123 D.P.R. 360 (1989).

El fin de la sentencia sumaria es aligerar la tramitación de un caso, permitiendo que se dicte sentencia sin celebrar una vista en los méritos, cuando de documentos no controvertidos surge que no existen controversias de hechos, sino lo que resta es aplicar el derecho. *Caquías Mendoza v. Asociación Residentes Mansiones de Río Piedras,* 135 D.P.R. __ (1993), **93 J.T.S. 127;** *Cuadrado Lugo v. Santiago Rodríguez, supra.*

No obstante, el objetivo de aligerar la tramitación de un caso no puede derrotar el principio fundamental de todo proceso ante un tribunal: alcanzar una solución justa. Por tanto, si existen dudas sobre la existencia de una controversia de hechos éstas deben resolverse en contra de la parte que solicita la sentencia sumaria. *Bonilla Medina v. Partido Nuevo Progresista,* __ D.P.R. __ (1996), **96 J.T.S. 33,** a la pág. 790; *PFZ Properties, Inc., v. General Accident Insurance Company, P.R. Ltd., supra.* El procedimiento sumario no permite que el tribunal dirima cuestiones de credibilidad. *Col. de Ingenieros y Agrimensores de P.R. v. A.A.A.,* __ D.P.R. __ (1992), **92 J.T.S. 137,** a la pág. 10025.

El mecanismo de sentencia sumaria es un remedio útil que se concede sólo cuando el tribunal tiene ante sí de manera incontrovertible la verdad sobre todos los hechos esenciales. Cuando de las alegaciones, deposiciones y admisiones, junto con las declaraciones juradas -si las hubiere- u otros documentos pertinentes surge que existe una controversia *bona fide* de hechos, no procede una sentencia sumaria. De haber duda en cuanto a la existencia de una controversia real, la misma debe resolverse en contra de la parte que la solicita. *Rodríguez Meléndez v. Sup. Amigo, Inc.,* 126 D.P.R. 117, 134 (1990).

Presentada una moción de sentencia sumaria por la parte contra quien se reclama, oponiéndose a la misma la parte reclamante, mientras los hechos estén controvertidos, a un tribunal sentenciador no le es permisible -distinto a cuando se sustancian en juicio oral dichos hechos- bajo la Regla 36 de Procedimiento Civil dirimir conflictos sobre esos hechos ni puede dicho tribunal pesarlos o evaluarlos a no ser para el fin de determinar si hay o no una genuina controversia sobre los mismos, pero no podrá adjudicar ahí entonces tal controversia, de haberla. *García López v. Méndez García,* 83 D.P.R. 363, 379-381 (1963).

Aunque la Regla 36 no queda excluida como cuestión de derecho de ningún procedimiento en particular de los que se rigen por las Reglas de Procedimiento Civil, un tribunal no debe dictar una sentencia sumaria donde hay elementos subjetivos envueltos y de intención y propósitos mentales, donde el factor de credibilidad juega un papel esencial, si no el decisivo, para llegar a la verdad, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo. *García López v. Méndez García, supra; Casto Soto v. Hotel Caribe Hilton,* __ D.P.R. __ (1994), **94 J.T.S. 128,** a la página 311.

Para derrotar una moción de sentencia sumaria, la parte promovida deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. Sin

embargo, el sólo hecho de no presentar evidencia que controvierta la presentada por la parte promovente, no implica que necesariamente proceda la sentencia sumaria. *Rivera Santana v. Superior Packing*, 133 D.P.R. __, **92 J.T.S. 165**, a la pág. 10165; *Consejo de Titulares del Condominio Parkside v. MGIC, supra; Cuadrado Lugo, supra*, pág. 7702; *Corp. Presiding Bishop, supra*, pág. 721; *Flores v. Municipio*, 114 D.P.R. 521 (1983); *PFZ Properties, Inc., v. General Accident, supra*.

Por otro lado, al dictar sentencia sumaria, el tribunal: (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal, *Medina Morales v. Merck, Sharp & Dohme*, 136 D.P.R. __ (1994), **94 J.T.S. 52**, a la pág. 11786; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido refutadas en forma alguna por los documentos. Sin embargo, el tribunal no deberá dictar sentencia sumaria cuando: (1) existen hechos materiales no controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o (4) como cuestión de derecho, no procede. *Corp. Presiding Bishop, supra*, pág. 7702; *PFZ Properties, Inc., v. General Accident, supra*.

La causa de acción que originó el recurso ante nosotros surgió alegadamente como consecuencia del despido injustificado y discriminatorio por parte de Ayerst hacia Navarro Morales, quien para esa fecha tenía 58 años de edad. El despido fue alegadamente llevado a cabo el 30 de noviembre de 1994, cuando Navarro Morales se desempeñaba como Supervisor de Mantenimiento Mecánico de Ayerst, en unión a José Ortiz Guzmán y Jorge Luis Salas. Estos alegadamente eran más jovenes en edad que Navarro Morales y al momento de presentarse la causa de acción aún trabajaban para Ayerst.

Surge del Primer Interrogatorio y Requerimiento de Admisiones, pregunta 21, que le cursara Ayerst a Navarro Morales en diciembre de 1995, lo siguiente:

*"Pregunta: 21) Indique y relate detalladamente los hechos en los que basa su alegación de discrimen por razón de edad".*

*Contestación: 21) Mi plaza o posición no se eliminó, la cubrieron con George Salas a quien yo me reportaba pues el estaba en el primer turno y yo en el segundo. La plaza de Salas fue cubierta por José Ortiz Guzmán, que aunque trabajaba en la misma subdivisión, hacía trabajos diferentes al nuestro y por lo tanto él sería el afectado. La mayor parte de los afectados eran más jovenes que yo y fueron re-localizados en diferentes plazas, otros se acogieron al retiro y a algunos los mantuvieron en el empleo hasta cumplir el tiempo y la edad, incluso hasta para conseguir beneficios adicionales. A mí no se me dió alternativa. Tampoco se me permitió en el empleo por unos meses más, lo cual me hacía elegible para recibir el beneficio del Plan de Retiro, con una cantidad cuatro veces mayor a la que soy elegible al presente".*

Según Ayerst, la plaza de Supervisor de Mantenimiento de Mécanico que ocupó Navarro Morales desde que empezó a trabajar fue eliminada por razón de la implantación de un programa de reorganización, y dicha plaza no fue cubierta por ninguna otra persona.

De la deposición tomada a Jorge Luis Salas, el 29 de agosto de 1996, se desprende, en lo pertinente, que estaba ocupando otra posición, la que ocupaba desde hacía año y pico atrás, su turno varió en términos de horario, se le asignaron otras tareas distintas a las que hacía anteriormente. Esos cambios se dieron luego que Navarro Morales se había ido de la compañía y no es hasta julio de 1996 que la plaza que ocupaba Navarro Morales se elimina.

Surge de la deposición tomada a Navarro Morales, el 17 de abril de 1996, y de los documentos ante nuestra consideración, que Navarro Morales comenzó como supervisor de mantenimiento mécanico con un horario regular al principio del año 1985. Trabajaba de domingo a jueves de 4:30 p.m. a 1:30 a.m. Después se cambió al segundo turno que comenzaba a las 2:30 p.m. y terminaba a las 11:00 p.m. Navarro Morales, alegó que su plaza no había sido eliminada y que no había habido reorganización de clase alguna en Ayerst.

Ayerst alega que le ofreció a Navarro Morales, por conducto de Martín Ortiz Feliciano, Director de

Personal, la posición de *"packaging operator"* y de *"line control operator"*. Navarro Morales, a preguntas de Ayerst en la deposición del 17 de abril de 1996 y antes en la contestación de un requerimiento de admisiones, negó bajo juramento el que se le ofrecieran esas dos plazas como alternativas a su despido. Por el contrario, expresó que en reunión con Ortiz Feliciano y Mariano Martínez Mora, Gerente General, este último le expresó que había tratado de buscar algo para él, pero que no había, que lastimosamente se tenía que ir. Conforme a la *"Notificación sobre Ley Federal WARN"* de 14 de septiembre de 1994, informándole de su despido, no se le informó a Navarro Morales sobre posición alterna y se le advirtió que no había derechos de desplazamientos y se le refirió a la Unidad de Empleados Desplazados de la Oficina de Oportunidades Económicas.

Ayerst por su parte, reiteró su alegación de que Navarro Morales le firmó un relevo de responsabilidad bajo la inducida y falsa creencia de que su plaza iba a ser eliminada. Este alegó que su consentimiento estuvo viciado y por lo tanto el relevo era nulo e inexistente. Firmó el relevo bajo el temor de que si no lo firmaba perdía los beneficios a los que era acreedor como empleado de Ayerst y que su plaza iba a ser eliminada. Siendo ello así, coaccionado por la información que le suministraron los representantes de Ayerst, no tuvo otra alternativa que firmar dicho relevo.

Ayerst alega que la firma del relevo es un hecho incontrovertido. Por su parte, Navarro Morales alega que el relevo es nulo e inexistente y que se obtuvo el consentimiento para su firma mediando coacción y dolo.

Del Primer Interrogatorio y Requerimiento de Admisiones que le fuera cursado a Navarro Morales en diciembre de 1995, en la interrogante 22, se le preguntó lo siguiente:

*"Pregunta: 22) Indique y relate detalladamente los hechos en que usted se basa para alegar que el consentimiento del demandante estuvo viciado al momento de firmar el relevo".*

*Contestación: 22) Al momento de firmar el recibo, el despido era aparente. No se me ofrecía alternativa alguna. La firma a mi entender era sólo necesaria a los fines de obtener el pago de los beneficios. Inclusive, en una ocasión se le preguntó al Director de Personal si era obligatorio firmar para coger el pago (2 semanas/años de servicios) y su respuesta fue: "Firman y lo cogen y se van con chavos o no firman y se van sin chavos". No tuve otra alternativa pues pensé que algo era mejor que nada. En reuniones con el Departamento de Personal y los Directores, estos insistían que sólo serían afectados aquellos los cuales su plaza o función sería eliminada y ofrecían algunos beneficios a los que supuestamente se iban a afectar".*

A base del estudio de los documentos y de lo antes expuesto, determinamos que existen serias interrogantes, entre otras, sobre los motivos o razones de Ayerst para solicitarle a Navarro Morales que firmara el Relevo General el que lo dejaría cesante como empleado de la primera, así también, sobre la validez del referido relevo en cuanto al consentimiento se refiere, y, por último, si efectivamente la plaza de Supervisor de Mantenimiento de Mécanico que Navarro Morales ocupaba fue eliminada o no.

Las interrogantes anteriormente mencionadas no podían ser adjudicadas sumariamente, procede remitirlas a una vista evidenciaria para su depuración. Nuestro Tribunal Supremo ha resuelto no favorecer la adjudicación sumaria en casos de las acciones, tanto por discrimen por razón de sexo como por razón de edad, sin haberse efectuado un análisis exhaustivo de los documentos presentados. *Rodríguez Meléndez v. Supermercado Amigo, supra; Casto Soto v. Caribe Hilton, supra.*

Por lo tanto resolvemos que actuó correctamente el foro de instancia al declarar no ha lugar la solicitud de sentencia sumaria presentada por Ayerst.

En mérito a lo antes expuesto, denegamos la expedición del auto solicitado y se confirma la resolución emitida por el tribunal de Primera Instancia, Sala Superior de Guayama, el 29 de octubre de 1997, que declaró no ha lugar la solicitud de sentencia sumaria de Ayerst. Se devolverá el caso a dicho foro para que continúen los procedimientos de forma consistente con lo resuelto.

Lo pronunció el Tribunal y lo certifica la señora Secretaria General.