Colón Birriel, Juez Ponente
*721 TEXTO COMPLETO DE LA SENTENCIA
El Tribunal de Primera Instancia, Sala Superior de Humacao, emitió una Sentencia Sumaria Parcial el 22 de noviembre de 1996, mediante la cual declaró con lugar la solicitud de sentencia sumaria presentada por el peticionario-apelado, Robertshaw Controls Company y otros ("Robertshaw"), en cuanto a la desestimación del pago de bono navideño y sin lugar otra solicitud de sentencia sumaria en cuanto a la reclamación por despido injustificado, presentada por los recurridos-apelantes, Luz B. Tiburcio Mendoza y Otros ("los recurridos-apelantes"). El dictamen fue objeto de mociones de reconsideración, tanto por Robertshaw como por los recurridos-apelantes, mociones que el foro de instancia declaró no ha lugar.
Así las cosas, Robertshaw, recurre mediante certiorari del dictamen del foro de instancia que declaró sin lugar su solicitud de sentencia sumaria por despido injustificado. Por su parte, los recurridos-apelantes apelan del dictamen que desestimó su reclamación concerniente al pago del bono navideño.
Surge del expediente, que los recurridos-apelantes, ex-empleados de Robertshaw, presentaron ante el Tribunal de Primera Instancia, Sala Superior de Humacao, demanda contra éste y otros reclamando salarios. Alegaron tener derecho a un mes de sueldo para completar su mesada, según lo estipula la ley y conforme a las promesas hechas por Robertshaw, al bono de navidad, computado según usualmente éste lo hacía y a cualquier otra compensación que en derecho procediere como consecuencia de la terminación de las operaciones de Robertshaw en Puerto Rico.
Por su parte, Robertshaw negó adeudar suma alguna a los recurridos-apelantes, fuere por los conceptos reclamados o por ningún otro. Alegó como defensas afirmativas, entre otras, que el despido estuvo justificado bajo las disposiciones legales aplicables, que respondió estrictamente a razones de negocio las que culminaron en el cierre total de su planta en Puerto Rico, y que cumplió con todas las disposiciones de la Ley Núm. 148 de 30 de julio de 1969, 29 L.P.R.A. see. 501 et. seq., sobre el bono de navidad.
Luego de varios trámites e incidentes, los recurridos-apelantes presentaron una "Solicitud de Sentencia Sumaria Parcial en Cuanto a Pago de Bono Navideño", solicitando se declarare con lugar su reclamación por concepto de pago del bono navideño.
Por su parte, Robertshaw presentó "Moción en Oposición a Solicitud de Sentencia Sumaria Parcial en Cuanto a Pago de Bono Navideño y Solicitando Sentencia Sumaria". Alegó que la solicitud de sentencia sumaria parcial presentada por los recurridos-apelantes era improcedente, y en su lugar procedía el que se dictara sentencia sumaria a su favor, tanto por la reclamación por concepto del pago del bono navideño, como por la reclamación de la mesada.
Así las cosas, el foro de instancia emitió su dictamen de 22 de noviembre de 1996, declarando sin lugar la solicitud de sentencia sumaria parcial de los recurridos-apelantes en cuanto a su reclamación por pago del bono navideño. Por otro lado, denegó la solicitud de sentencia sumaria de Robertshaw en cuanto a la causa de acción por despido injustificado.
Como hemos señalado antes, tanto Robertshaw como los recurridos-apelantes presentaron respectiva y oportunamente mociones de reconsideración al dictamen adverso del tribunal, mociones que fueron declaradas no ha lugar por el foro de instancia.
Inconformes, ambas partes solicitaron la revisión del dictamen de dicho foro. Por su parte, Robertshaw presentó recurso de certiorari imputándole al foro de instancia el haber incurrido en error, al denegarle su solicitud de sentencia sumaria en cuanto al despido injustificado, ya que como cuestión de derecho el cierre total de las operaciones de una empresa constituye justa causa para el despido.
Por otro lado, los recurridos-apelantes presentaron recurso de apelación, imputándole al foro de instancia error al no resolver: 1) si Robertshaw estaba obligado a pagar a la demandante Nelly *722 Maldonado el bono navideño; 2) que dicho bono era parte integral del salario del empleado y como tal protegido contra reducciones arbitrarias, y 3) que el uso y costumbre de pagar el bono navideño a un tipo mayor que el establecido por ley constituyó una oferta unilateral de Robertshaw, ratificada por éste año tras año y aceptada por los empleados, lo cual se convirtió en parte integral del contrato de trabajo.
III
La Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap.III, R. 36, autoriza a un tribunal a dictar sentencia sumaria en un caso, cuando de los documentos y declaraciones sometidos en apoyo a la moción quedare demostrado que no existe controversia real sustancial en cuanto a ningún hecho material y que sólo resta aplicar el derecho. La sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito. Guerrido García v. Universidad Central de Bayamón, _ D.P.R. _ (1997), 97 J.T.S. 79, a la pág. 1104; P.F.Z. Properties Inc. v. General Accident Insurance Co., _ D.P.R. _ (1994), 94 J.T.S. 116, a la pág. 125; Consejo de Titulares del Condominio Parkside, etc. v. MGIC Financial Corporation, _ D.P.R. _ (1991), 91 J.T.S. 54; Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272, 279-280 (1990); Corp. of Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720-721 (1986); Nassar Rizek v. Salvador O. Hernández, 123 D.P.R. 360 (1989).
El fin de la sentencia sumaria es aligerar la tramitación de un caso, permitiendo que se dicte sentencia sin celebrar una vista en los méritos, cuando de documentos no controvertidos surge que no existen controversias de hechos, sino lo que resta es aplicar el derecho. Caquías Mendoza v. Asociación Residentes Mansiones de Río Piedras, 135 D.P.R. _ (1993), 93 J.T.S. 127; Cuadrado Lugo v. Santiago Rodríguez, supra.
No obstante, el objetivo de aligerar la tramitación de un caso no puede derrotar el principio fundamental de todo proceso ante un tribunal: alcanzar una solución justa. Por tanto, si existen dudas sobre la existencia de una controversia de hechos éstas deben resolverse en contra de la parte que solicita la sentencia sumaria. Bonilla Medina v. Partido Nuevo Progresista, _ D.P.R. _ (1996), 96 J.T.S. 33, a la pág. 790; PFZ Properties, Inc. v. General Accident Insurance Company, P.R. Ltd., supra. El procedimiento sumario permite que el tribunal dirima cuestiones de credibilidad. Col. de Ingenieros y Agrimensores de P.R. v. A.A.R., _ D.P.R _ (1992), 92 J.T.S. 137, a la pág. 10025.
Para derrotar una moción de sentencia sumaria, la parte promovida deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. Sin embargo, el sólo hecho de no presentar evidencia que controvierta la presentada por la parte promovente, no implica que necesariamente proceda la sentencia sumaria. Rivera Santana v. Superior Packing, 133 D.P.R. _, 92 J.T.S. 165, a la pág. 10165; Consejo de Titulares del Condominio Parkside v. MGIC, supra; Cuadrado Lugo, supra, pág. 7702; Corp. Presiding Bishop, supra, pág. 721; Flores v. Municipio, 114 D.P.R. 521 (1983); PFZ Properties, Inc. v. General Accident, supra.
Por otro lado, al dictar sentencia sumaria,
"(1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal, Medina Morales v. Merck, Sharp & Dhome, 136 D.P.R. _ (1994), 94 J.T.S. 52, a la pág. 11786; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido refutadas en forma alguna por los documentos. Sin embargo, el tribunal no deberá dictar sentencia sumaria cuando: (1) existen hechos materiales no controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o (4) como cuestión de derecho, no procede." Corp. Presiding Bishop, supra, pág. 7702; PFZ Properties, Inc. v. General Accident, supra.
El recurso de certiorari, presentado por Robertshaw le imputa, esencialmente, al Tribunal de Instancia el haber incurrido en error al denegar su solicitud de sentencia sumaria en cuanto al despido injustificado. Entendemos que le asiste la razón. Veamos.
Los recurridos-apelantes alegan tener derecho al pago de la mesada según lo dispone la Ley Núm. *723 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secciones 185a et seq. Admiten haber recibido el pago de una semana por cada año de servicio que prestaron a la empresa, pero alegan que no se les pagó el mes de sueldo acorde con las disposiciones de la referida Ley Núm. 80, supra, la que confiere a todo empleado que haya sido despedido sin justa causa el derecho a: (1) al sueldo correspondiente a un mes por concepto de indemnización; y (2) a una indemnización progresiva adicional equivalente a una semana por cada año de servicio. La obligación de indemnizar a un trabajador que ha sido despedido no es absoluta sino que surge cuando se le despide caprichosamente, esto es, cuando su despido fue sin causa o motivo. La indemnización por despido injustificado es comúnmente conocida como el pago de la mesada. El Art. 8 de la citada ley, crea la presunción de que el despido del empleado fue injustificado. Le toca al patrono rebatir dicha presunción. Si el patrono opone como defensa afirmativa el haber mediado justa causa para el despido, le corresponde probar, mediante la preponderancia de la evidencia, que el despido estuvo justificado. Delgado Zayas v. Hospital Interamericano, _ D.P.R. _ (1994), 94 J.T.S 119, a la pág. 500; Rivera Aguila v. K-Mart de P.R., 123 D.P.R. 599, 610 (1989).
Por otro lado, el Art. 2 de la Ley 80, supra, dispone, en los apartados (d) y (f) como sigue: "[s]e entenderá como justa causa para el despido: (d) Cierre total, temporero o parcial de las operaciones del establecimiento; (f) Reducciones en el empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido".
Se desprende de lo expuesto en el párrafo anterior, que un patrono tiene el derecho en ley a cesantear empleados de acuerdo a las necesidades de su empresa. Recae, pues, sobre el patrono el peso de establecer justa causa para las cesantías o despido. De éste establecer que el despido de sus empleados fue por justa causa, no viene obligado a pagar mesada alguna.
Por otra parte, en las Guías para la Interpretación y Aplicación de la Ley Núm. 80, supra, del Departamento del Trabajo y Recursos Humanos de Puerto Rico, página 38, se dispone:

"4. Cierre Total, Temporero o parcial de las operaciones del Establecimiento.

Las [sic] responsabilidad y obligaciones del patrono en caso del cierre de un establecimiento debe examinarse en [sic] base a las circunstancias siguientes:

"a. Si el cierre es total y permanente,

b.
c.
d. Cierre Total y permanente

En caso del cierre total y permanente de un establecimiento el patrono no está obligado a cumplir con disposición legal alguna bajo la Ley Núm. 80, ya que al cerrar no retiene ni reemplea trabajador alguno. En este contexto el cierre permanente es aquel que se prolonga por más de seis meses."

Los recurridos-apelantes alegaron en su reclamación, que "[L]a compañía le anunció a sus empleados que terminaría sus operaciones en Puerto Rico el día 16 de noviembre de 1994", alegación 5 de su reclamación, véase apéndice 1 y 2 del recurso de certiorari de Robertshaw. Por su parte, Robertshaw aceptó dicha alegación en el párrafo 1 de su contestación a la reclamación," véase apéndice 3-5 del recurso de certiorari de Robertshaw.
Por otro lado, de una lectura de la transcripción de deposición tomada el 23 de enero de 1995 al Sr. Enrique Rivera, "comptroller" de Robertshaw, páginas 53-85 del apéndice del escrito de apelación de los recurridos, surge que Robertshaw no tiene en Puerto Rico, ninguna clase de operaciones, inventarios o activos, cuentas a cobrar, demandas, deudas, valores, bonos, empleados en nómina. El local donde ubicaba su planta lo entregaron a Fomento, transfirieron fuera de Puerto Rico maquinaria que tenían en dicha planta, etc. Los dos únicos empleados de Robertshaw que quedaban, los señores Carlos Carrión y Enrique Rivera, el "comptroller", terminaban sus funciones, el primero en enero, y el *724 segundo en marzo o abril de 1995. En resumen Robertshaw no tiene ningún tipo de operación que lo [ ate en Puerto Rico. i
Resulta de todo lo anterior, que no hay controversia real sustancial en cuanto a que Robertshaw cerró sus operaciones de forma total y permanente en Puerto Rico, por lo cual los despidos de los empleados estuvieron justificados. Siendo los despidos justificados, los recurridos-apelantes no tienen derecho a mesada alguna, por lo que Robertshaw no venía obligado a pagar la misma.
En armonía con la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia interpretativa, Robertshaw, quien tenía el peso de la prueba, logró establecer mediante la preponderancia de la evidencia presentada ante instancia que los despidos de los recurridos-apelantes estuvieron justificados. Por tanto, procedía el que el Tribunal de Primera Instancia dictara sentencia sumaria a su favor, y al no hacerlo incurrió en error.
Por otro lado, los recurridos-apelantes, le imputan error al Tribunal de Primera Instancia al no resolver si Robertshaw estaba obligado a pagar a la co-demandante Nelly Maldonado :su bono de navidad. No tienen razón, toda vez que éstos no lo plantearon ante el foro instancia. -Es. decir, no pusieron en condiciones a dicho foro para resolver esta controversia en particular. Veamos.
En el párrafo número cinco (5) de la Solicitud de Sentencia Sumaria Parcial en Cuanto al Pago de Bono Navideño los recurridos-apelantes hicieron referencia a que Robertshaw le ”[p]agó a los 59 demandantes el Bono Navideño al dos por ciento, en vez de al cuatro, como se había pagado durante 20 años. Al otro demandante no le fue pagada suma alguna por este concepto", página 8 del apéndice de los recurridos-apelantes. No obstante, éstos en sus comparecencias y alegatos no.identificaron el caso particular de la Sra. Nelly Maldonado.
Tampoco se desprende de los escritos ante nos, que éstos presentaran evidencia de clase alguna, que demostrara que Nelly Maldonado tuviere algún derecho al bono de navidad al momento de las operaciones de Robertshaw en Puerto Rico y que el mismo no le fuera pagado. Al éstos no presentar adecuadamente el caso particular de Nelly Maldonado, dicho tribunal actuó correctamente al no considerarlo.
En cuanto al resto de los señalamientos, en que esencialmente los recurridos-apelantes le imputan como error al Tribunal de Primera Instancia, el no resolver que el uso y costumbre convirtió en parte integral del contrato de trabajo el Bono Navideño, resolvemos que tampoco tienen razón. Veamos. El Tribunal de Primera Instancia determinó en su dictamen que:
"[e]n el caso de autos ambas partes han admitido como un hecho establecido que el bono de navidad pagado a los demandantes en diciembre de 1984 [sic] 1994, fue calculado a base de un dos por ciento. Todas las partes reconocen que en diciembre de 1994 [sic] 1993, el bono navideño se pagó en proporción a un cuatro porciento. No existe controversia sobre ningún hecho esencial que nos impida resolver sumariamente, el asunto del bono navideño. Esta controversia se reduce a una• mera cuestión de derecho." Páginas 4 y 5 de la sentencia objeto de los recursos.
El Art. 1 de la Ley Núm. 148 de 30 de julio de 1969, 29 L.P.R.A. see. 501, dispone que:

"Todo patrono que emplee uno o más trabajadores o empleados dentro del período de doce (12) meses comprendidos desde el 1ro. de octubre de cualquier año natural hasta el 30 de septiembre del año natural subsiguiente, vendrá obligado a conceder a cada empleado que haya trabajado setecientas (700) horas o más de cien (100) horas o más cuando se. trate de trabajadores de muelles, dentro del indicado período, un bono equivalente al 2% del total de salarios, computados hasta un máximo de diez mil (10,000) dólares, devengados por el empleado o trabajador dentro de dicho lapso de tiempo. El total de las cantidades pagadas por concepto de dicho bono no excederá el 15% de las ganancias netas anuales del patrono, habidas dentro del período comprendido desde el 30 de septiembre del año anterior hasta el 30 de septiembre del año a que corresponda el bono. Disponiéndose que, al computar el total de las horas trabajadas por un empleado para recibir los beneficios de este Capítulo, se deberán contar aquellas horas trabajadas para un mismo patrono, aunque los servicios se hayan prestado en diferentes negocios, industrias y otras actividades de ese 
*725
patrono.

Este bono constituirá una compensación adicional a cualesquiera otros salarios o beneficios de otra índole a que sea acreedor el empleado, pero será acreditadle cualquier otro bono de la misma índole a que tenga derecho el empleado en virtud de su contrato individual de trabajo."

De los escritos ante nos, surge una carta que le escribiera el Consultor de Recursos Humanos, Héctor M. Alemán, de Robertshaw, el 29 de noviembre de 1994, al Departamento del Trabajo y Recursos Humanos ("Departamento"). En esta, se le notifica, en lo pertinente, al Departamento que "[l]a compañía Corox Controls desea acogerse a la disposición contenida en el Artículo 1 de la Ley 148 del 30 de junio de 1969 (Ley del Bono de Navidad) y ser eximida del pago de dicho Bono". Así las cosas, el 1 de diciembre de 1994, el Departamento contestó dicha carta y le notificó a Robertshaw, entre otras cosas: "Los estados financieros que ustedes remitieron no reúnen los requisitos antes señalados, ya que no corresponden al período establecido en la ley..., esa firma viene obligada a otorgar el bono de referencia en su totalidad a sus empleados a base del 2% como antes se informase aun cuando haya operado con pérdidas, según establece la citada ley, por no haber cumplido con los requisitos antes mencionados...".
De lo antes mencionado surge meridianamente claro que Robertshaw estaba obligado a pagarle a sus empleados un bono equivalente al 2% del total de salarios, computados hasta un máximo de diez mil ($10,000.00) dólares.
Alegadamente, Robertshaw comenzó a operar como patrono de los recurridos-apelantes en el año 1993, año en que adquirió la compañía. No surge controversia en cuanto a que en ese primer año el bono navideño fue el equivalente al 4% del total de los salarios, dada la buena situación económica de la compañía.
Tampoco hay controversia en cuanto a que en 1994 por motivo del cierre de operaciones de Robertshaw y que los recurridos-apelantes no trabajaban para éste, el bono navideño fue el equivalente al 2% del total de los salarios devengados hasta un máximo de $10,000.00, a saber, $200.00. Los recurridos-apelantes admiten que dicho pago le fue efectuado a 59 empleados. Habiendo Robertshaw cumplido con los requisitos exigidos por la Ley Núm. 148, supra, conforme a las directrices recibidas del Departamento en su comunicación del 1 de diciembre de 1994, antes mencionada, y por no existir controversia real sustancial en cuanto a la obligación del pago del bono navideño por éste, resolvemos que el Tribunal de Primera Instancia actuó correctamente al declarar no ha lugar la sentencia sumaria solicitada por los recurridos-apelantes.
Por los fundamentos antes expuestos, confirmamos la sentencia sumaria parcial de 22 de noviembre de 1996, que desestimó la reclamación del complemento de pago de bono navideño y el pago de la mesada presentada por los recurridos-apelantes; expedimos el recurso de certiorari solicitado por Robertshaw y declaramos ha lugar su solicitud de sentencia sumaria por concluir que no existe una controversia real sustancial con respecto al cierre total de su empresa y, por ende, el despido de los recurridos-apelantes fue uno justificado.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General