Rossy García, Juez Ponente
*1060 TEXTO COMPLETO DE LA SENTENCIA
El recurso instado en el caso de epígrafe interesa la revisión y revocación de una denominada "Sentencia" emitida por el Tribunal de Primera Instancia, Sala Superior de Mayaguez (Ricardo Santana Ramos, J.). Mediante ésta, dicho foro declaró con lugar una moción en solicitud de sentencia sumaria parcial promovida por los aquí demandados y desestimó una de las reclamaciones de la demandante, al resolver que el pagaré de $84,000.00, cuyo cobro dio base a dicha causa de acción, "fue pagado". Así, al acoger con aprobación dicha moción el tribunal de instancia resolvió "que entre el tenedor original[, Juan de Dios Bonilla Camocho] y el deudor [co-demandado apelado] existió la intención de cancelar la deuda y para hacerlo evidente cancelaron el mismo ponchando el documento con la palabra cancelado [...; que] hubo la entrega del mismo a su deudor; [y que] tratándose de un título al portador basta con su simple entrega al deudor para que realice la transmisión de su propiedad a éste". De otra parte, habiendo concluido que "no exist[ía] controversia" sobre una segunda causa de acción instada por la demandante la cual asimismo se reclamó el pago de una deuda evidenciada por otro pagaré, éste a la orden de la demandante, Sra. Bonilla el juzgador ordenó a la parte demandada "El pago del pagaré por la cantidad de $12,500.00 [sic] más los intereses legales al 9.50% desde que se dicta esta sentencia y hasta que se satisfaga la misma, el pago de $1,200.00 por las costas y gastos del litigio por honorarios de abogado, según pactado en el pagaré...". 
Inconforme con dicho dictamen y en atención a que el tribunal de instancia denominó el mismo "Sentencia", la demandante instó el presente recurso como una "Apelación", por lo que así fue tramitado por la secretaría de este Tribunal. Considerada ahora la naturaleza del dictamen recurrido, observamos que no está ante nuestra consideración una sentencia parcial sino una adjudicación interlocutoria parcial, Regla 43.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.5, ello toda vez que el tribunal a quo nada dispuso en cuanto a la reconvención instada por los demandados. De igual forma observamos que el tribunal de instancia dejó pendiente de resolución la reclamación hecha por otro litigante en contra de la parte aquí demandada-apelada, acción que fue consolidada con el presente caso motu proprio por dicho foro con la anuencia de la representación legal de todas las partes envueltas en el litigio. Además, al emitir dicho dictamen el foro recurrido no hizo una conclusión expresa a los efectos de que no existía razón para posponer dictar sentencia hasta la resolución total del pleito, que haga posible la ejecución del mismo conforme a la Regla 51 del citado cuerpo de reglas. Ante esta realidad, evidente resulta que está ante nuestra consideración un dictamen interlocutorio, revisable exclusivamente mediante el recurso discrecional de certiorari, Asociación de Propietarios v. Santa Bárbara Co., 112 D.P.R. 33, 37, 43 (1982), por lo que así habremos de considerarlo.
Encontrándonos en condición de adjudicar los méritos del recurso instado, en el que la recurrente imputa esencialmente que incidió el foro de instancia al adjudicar sumariamente la controversia atinente a tal reclamación "bajo las circunstancias peculiares del presente caso", resolvemos que resulta procedente expedir el auto de certiorari para revocar el extremo del dictamen recurrido que es objeto de impugnación y devolver el caso para la continuación de los procedimientos de conformidad con los términos que a continuación pasamos a exponer.
I
Los hechos que originan la controversia que dio lugar al recurso que nos ocupa se remontan al año 1989, en cuya ocasión los demandados-recurridos, señor Carmelo Bonilla Camacho (don Carmelo) y su esposa, doña Paula Vega Pabón, otorgaron un pagaré al portador por la suma de ochenta y cuatro mil dólares ($84,000.00), el cual sería pagadero a su presentación. Según surge de autos, dicho documento nació a la vida mercantil como un instrumento negociable cuando fue entregado al señor Juan de Dios Camacho Bonilla por don Carmelo (co-demandado), hermano de Juan de Dios y co-deudor de la obligación dineraria así contraída y representada por el referido pagaré. Surge del referido pagaré, además, que el mismo fue endosado por Juan de Dios Camacho Bonilla y su esposa, Francisca Hernández, a favor de la aquí demandante, Nilza Bonilla Hernández.
*1061 Con este trasfondo, y en lo que nos es pertinente, el 24 de julio de 1996 la demandante recurrente, señora Nilza Bonilla Hernández (Sra. Bonilla) -hija de Juan de Dios instó una demanda en cobro de dinero en la que nombró como demandados a don Carmelo y su esposa, así como a la sociedad legal de gananciales por ellos constituida, escrito en el que alegó que dicha parte le adeudaba, entre otras, la suma de $84,000.00 evidenciada por pagaré al portador suscrito ante el Notario Público Rafael Doitteau Cruz; que dicho pagaré "Le fue entregado al co-demandado Carmelo Bonilla Camacho ante el hecho de que éste iba a pagar el mismo"', y que, "ante la confianza que tenía la demandante en dicho co-demandado por existir una relación de tío-sobrina[,] la demandante no guardó copia del [referido] pagaré". Luego de hacer las alegaciones de rigor en cuanto a que la deuda era líquida, estaba vencida, y que su requerimiento de pago a los deudores había sido infructuoso, la Sra. Bonilla peticionó al foro de instancia que declarara Con Lugar su demanda ordenando el pago de las sumas reclamadas, así como que se condenara a los demandados a satisfacer las costas y gastos del pleito, amén de que se impusiera a dicha parte una cantidad considerable por concepto de honorarios de abogado.
Emplazados como fueron, los demandados presentaron su contestación a la demanda en cuya ocasión, si bien reconocieron la existencia del pagaré por ellos suscrito por la suma de $84,000.00, negaron "que se adeude pagaré alguno por [dicha suma]", aduciendo que dicha obligación "está totalmente pagad[a] y canceladla]". Asimismo negaron toda otra alegación hecha al respecto por la demandante, Sra. Bonilla. Como defensas afirmativas levantaron, entre otras, la prescripción de la acción en cobro de dinero y la alegada naturaleza mercantil de la obligación evidenciada por el controvertido pagaré —cuyo incumplimiento servía de base a la misma— así como que el pagaré de $84,000.00 "jfue cancelado". En cuanto a tal reclamación de cobro incoada, dicha parte interpuso, además, las defensas especiales de dación en pago, confusión de derechos, compensación y novación. De otra parte, y por vía de reconvención, en el referido escrito los demandados alegaron la existencia de ciertas cantidades adeudádales por la demandante y por los demás herederos de Juan de Dios (quien, como ha quedado expuesto, file el padre y hermano, respectivamente, de las partes litigantes), entre las que incluyeron los gastos de servicios funerarios en que la demandada-reconviniente incurrió al fallecer Juan de Dios, así como en los de la esposa de éste, Francisca Hernández Lliteras, padres de la demandante-reconvenida Sra. Bonilla.
A tenor de lo allí alegado, y según surge de los autos, junto con dicho escrito en contestación a la demanda los demandados presentaron una moción solicitando la desestimación parcial de la misma, así como otra en la que peticionaron que se dictara sentencia sumaria parcial a su favor. Al así contender, la parte demandada sostuvo la procedencia de dicho vehículo procesal para resolver la controversia atinente al pagaré por la suma de $84,000.00 exponiendo, esencialmente, que tenía en su poder el documento que evidenciaba la deuda cuyo pago se le requería, el cual "había suscrito como deudor el 2 de octubre de 1989"; que del mismo surgía que se trataba de un pagaré emitido "al portador"; y que lo tenía "porque lo pagó en el año 1992 ó 1993, a quien fue su legal tenedor [Juan de Dios Camacho Bonilla]". Descansó así, en apoyo a su alegación de que la obligación había quedado extinguida, en el inciso 5 de 10 L.P.R.A. sec. 201, disposición que contempla las distintas circunstancias en las que se considerará que un instrumento negociable quedará cancelado, y el cual íntegramente provee que [q]ueda cancelado un documento negociable:
(5) Cuando el deudor principal llegue a ser el tenedor del documento al vencimiento o después del vencimiento, por derecho propio." 10 L.P.R.A. sec. 201(5).
De otra parte, alegó la aplicabilidad de las disposiciones pertinentes de la Regla 16 de las de Evidencia, bajo la que se constituye, como una presunción controvertible, "[q]ue una obligación entregada al deudor, ha sido satisfecha". Regla 16(9) de Evidencia, 32 L.P.R.A. Ap. IV, R. 16 (9).
Sometió, además, una declaración jurada suscrita por dicho demandado, reafirmándose en que "es correcto que poseo hace varios años en mi poder y debidamente cancelado un pagaré por la suma de $84,000.00 otorgado por mí y mi esposa, y lo tengo en mi poder desde hace tiempo porque se lo pagué a la persona que fue mi acreedor una vez, el Sr. Juan de Dios Bonilla, el que se canceló en *1062 _ dicha ocasión". Los demandados acompañaron su moción, además, con copia del pagaré -sobre cuya faz aparecía repetidamente estampado un sello con la palabra 'CANCELADO'.
Posteriormente los demandados sometieron otra moción a los mismos efectos predicada en que la acción instada por la Sra. Bonilla estaba prescrita por tratarse el controvertido pagaré de uno de naturaleza mercantil. Aunque dicho escrito no se hizo formar parte del expediente ante nos, la esencia de lo allí expuesto surge de la contestación que al mismo presentara la demandante, Sra. Bonilla, en o alrededor del 26 de marzo de 1997. Así, en su "Moción en oposición a Sentencia Sumaria por prescripción de la acción", dicha demandante refuta lo que, a su entender, fueron las alegaciones básicas expuestas por los demandados en la moción de sentencia sumaria por ellos sometida. A tenor, la Sra. Bonilla argumentó en su contestación que, de "[l]o que no existe duda es que el pagaré de $84,000.00 estaba endosado a favor de la demandante, Nilza Bonilla Hernández, lo que, [a su entender], lo convierte en un documento a la orden", y que "asumiendo que la teoría de los demandados es cierta, [es decir, que el pagaré estaba en manos de Juan de Dios], el tenedor en aquella ocasión, Juan de Dios Bonilla Camacho, no lo era de buena fe porque el pagaré de $84,000.00 estaba endosado a nombre de otra persona, a saber, Nilsa [sic] Bonilla Hernández y ésta no [le] había endosado el pagaré [a] su vez". (Enfasis suplido). En su virtud, fue la alegación de la demandante en su escrito que "[e]l actual tenedor, Carmelo Bonilla Camacho, e[s] uno de mala fe pues aceptó como supuesto pago un pagaré que de su faz estaba defectuoso..."', que el defecto surgía a raíz de que el documento tenía "un endoso a favor de otra persona que no e[ra] su tenedor," por lo que "[mjucho menos podría alegar que pagó dicho pagaré", todo ello como base para argumentar que lo procedente era el cobro de la deuda por ella reclamada a los demandados. En apoyo a su contención, la Sra. Bonilla acompañó su escrito con una declaración jurada, además de ofrecerle al tribunal recurrido una copia del pagaré en controversia, al dorso del cual, en su segunda página y hacia el centro del documento, aparecen las iniciales de los endosantes, 'J.D.B.C.', 'F.H.L', así como el siguiente endoso bajo las referidas iniciales: 

"Para Nilza Bonilla

(Firmado)

Juan D. Bonilla Camacho

(Firmado)

Francisca Hernández"

Replicada como fue la oposición así presentada, del escrito que al respecto sometieran los demandados en o alrededor del 7 de abril de 1997, surge que éstos, además de negar el alegado endoso a favor de la Sra. Bonilla, expusieron ante el tribunal de instancia que tal teoría representaba una variación de las alegaciones de la demanda, en la cual, en ningún sitio dice eso, [es decir, que el documento le hubiese sido endosado a ésta, "[lo] que ciertamente era una alegación vital..." 
Así las cosas, y en contemplación a un señalamiento de conferencia con antelación a juicio, el 7 de mayo de 1997 las representaciones legales de las partes aquí comparecientes se reunieron para producir el correspondiente informe de conferencia preliminar entre abogados. Según surge de autos, se consignaron allí las respectivas teorías jurídicas de las partes, se definieron las controversias y se indicó la prueba testifical y documental que los litigantes habrían de aportar en apoyo a sus respectivas contenciones. Es de rigor señalar, además, que en dicho informe la Sra. Bonilla sometió una enmienda a su demanda, ello para conformarla a su teoría de derecho. Así, la reclamación sobre la controvertida deuda aquí imputada a los demandados, quedó enmendada para alegar que la misma respondía a:
"B. $84,000.00 evidenciadla] por pagaré al portador suscrito ante el Notario Público Rafael Doitteau Cruz, el 2 de octubre de 1989, affidavit número 6,368. Este documento fue endosado a favor de la demandante por sus legítimos tenedores, Juan de Dios Bonilla Camacho y Francisca Hernández Lliteras, y entregado a la demandante, constituyéndose ésta en tenedora legítima del mismo para su cobro," 
alegación que suplemento aquélla hecha originalmente en su demanda, de que "[e]ste pagaré le fue *1063 entregado al co-demandado Carmelo Bonilla Camacho ante el hecho de que este iba a pagar el mismo y ante la confianza que tenía la demandante en dicho co-demandado por existir una relación de tío-sobrina". Según surge del referido informe, los demandados no objetaron tal enmienda ni tampoco sometieron enmienda alguna bajo el acápite de "Enmiendas" para conformar su contestación a la demanda, a la enmienda que hiciera la demandante, antes citada. Ello no obstante, los demandados rechazaron la "estipulación" presentada al respecto por la demandante, o sea, la existencia del alegado "endoso en el pagaré de $84,000.00 a favor de Nilsa Bonilla". 
Con estos antecedentes procesales, el tribunal de instancia celebró la conferencia con antelación a juicio el 13 de mayo de 1997. Según se desprende de la minuta que recogiera los incidentes allí acaecidos, en dicha ocasión el foro recurrido se reafirmó en su posición previa de consolidar las acciones independientes que habían sido instadas contra los aquí demandados -recurridos, por lo que, luego de hacer constar que "obran en autos informes sobre conferencia preliminar presentados en la tarde de hoy en ambos casos", el magistrado a cargo del caso expresó que "[sje aprueban los informes presentados, sujeto a las enmiendas que puedan surgir en el término de 15 días antes mencionado, y se adoptan como el acta que regirá los procedimientos". Asimismo surge de la minuta en cuestión que el tribunal tomó por sometidas las mociones hasta aquí relacionadas, y que pospuso su consideración hasta una fecha posterior al subsiguiente 14 de junio, en cuya ocasión los abogados de las partes se reunirían en contemplación a lograr alcanzar un acuerdo transaccional. Finalmente, surge que la fecha del juicio en su fondo quedó señalada para el 14 de mayo de 1998.
Lo anteriormente dicho no obstante, la vista señalada para dilucidar los méritos de la demanda de epígrafe no se celebró. En su lugar, con fecha de 3 de junio de 1998. el foro recurrido dictó "sentencia" mediante la cual acogió con aprobación la moción de sentencia sumaria parcial promovida por los demandados, declarando la misma "HA LUGAR", y denegó aquélla promovida por la parte demandante.
Según expuesto, al así concluir, el juzgador apoyó su dictamen en los únicos hechos que determinó como "incontrovertibles", a saber, ”[1 ] que el pagaré por la cantidad de $84,000.00 se encuentra en poder del demandado y [2] que el mismo fue cancelado con el sello perteneciente a la oficina del notario licenciado Rafael Doitteau Cruz", ello como fundamento para sostener que "[tratándose de un título al portador basta con su simple entrega al deudor para que se realice la transmisión de su propiedad a éste", y concluir, como cuestión de derecho, que "Elpagaré de $84,000.00fue pagado". Lo anteriormente dicho no obstante, obvio resulta que el foro de instancia adjudicó una cuestión de hechos y dirimió asuntos de credibilidad, pertinentes a la controversia, lo que surge claramente de las expresiones vertidas en su dictamen al referirse a la moción de sentencia sumaria presentada por la demandante. Así, de una parte concluyó que en dicho escrito la demandante se había limitado "a hacer nuevas alegaciones señalando que la persona que entregó el pagaré no fue la demandante, como alegó originalmente, sino el padre de ésta, Juan de Dios Bonilla Camacho, quien era un tenedor de mala fe", sin que una conclusión al respecto suqa de sus determinaciones de hechos no controvertidas, lo cual, además, no encuentra apoyo alguno en el expediente ante nos. De otra, resolvió "que entre el tenedor original [, Juan de Dios] y el deudor [el aquí co-demandado, don Carmelo, existió la intención de cancelar la deuda y para hacerlo evidente cancelaron el mismo ponchando el documento con la palabra cancelado...", todo lo cual obvia la genuina controversia de hechos surgida entre las partes litigantes, a saber, quién en realidad entregó a Juan de Dios el controvertido pagaré, y la intención que medió entre las partes al efectuarse dicha entrega.
Según ya indicado, resolvemos que al así proceder el foro de instancia incidió sobre dicho extremo, por lo que el dictamen sumario emitido al respecto no puede prevalecer.
n
-A-
LA SENTENCIA SUMARIA
Como es sabido, en nuestra jurisdicción las disposiciones que regulan la "Sentencia dictada sumariamente" están contenidas en la Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36. Así, la Regla 36.3 autoriza que:
*1064 "[l]a sentencia solicitada se dictará inmediatamente si las alegaciones, disposiciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente.
De la citada disposición surge con meridiana claridad que no procede resolver un litigio mediante el mecanismo de sentencia sumaria cuando de los documentos que obran en autos resulta qué hechos materiales, es decir, aquéllos que pueden afectar el resultado de la acción incoada, están en controversia. Es por ello que un tribunal no puede, en una moción de sentencia sumaria, juzgar cuestiones de hechos, y su autoridad se circunscribe a determinar si hay cuestiones que deben dilucidarse enjuicio. Sucn. Meléndez v. D.A.C.O., 112 D.P.R. 86, 89 (1982).
Como bien se ha expresado, el propósito cardinal de dicha disposición es promover una solución justa, rápida y económica en aquellos pleitos en los que, por no estar envuelta una genuina controversia de hechos, se hace innecesaria la celebración de un juicio en su fondo. González Pérez v. E.L.A., 140 D.P.R. _ (1995), 92 J.T.S. 52; González v. Alicea, 133 D.P.R. _(1993), 93 J.T.S. 16, pág. 10380; Rivera Santana v. Superior Packaging, 133 D.P.R. _ (1992), 92 J.T.S. 165, pág. 10165; Mercado v. U.P.R., 128 D.P.R. 273, 281 (1991); Padín v. Rossi, 100 D.P.R. 259, 263 (1971).
Conforme a estos principios, en el análisis de determinar su procedencia, el juzgador habrá de discernir cuidadosamente al respecto pues, mal utilizada, la sentencia sumaria puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido procedimiento de ley. Roig Commercial Bank v. Rosario Cirino, 126 D.P.R. 613, 617 (1990). Es por esta razón que el tribunal debe cerciorarse de la total inexistencia de controversias de hechos y que el residuo sea la aplicación del derecho. Guerrido García v. U.C.B., 143 D.P.R. _ (1997);.Figueroa v. Hernández Torres, 139 D.P.R. _ (1994), 94 J.T.S. 134; Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720 (1986); Consejo de Titulares del Condominio Parkside v. M.G.I.C. Financial Corp., 128 D.P.R. 538, 548 (1991); José A. Cuevas Segarra, Práctica Procesal Puertorriqueña, Vol. II, Publicaciones J.T.S., San Juan (1979), pág. 182.
Resulta, pues, norma clara que la sentencia sumaria sólo procede cuando el tribunal tiene ante sí la verdad sobre todos los hechos pertinentes. Tello Rivera v. Eastern Airlines, 119 D.P.R. 83, 86 (1987); Padín v. Rossi, supra, pág. 263. En tales casos, y por no existir una verdadera controversia de hechos entre las partes, la celebración del juicio en su fondo se hace innecesaria. Flores v. Municipio de Caguas, 114 D.P.R. 521, 525 (1983); Sucn. Meléndez v. D.A.C.O., supra, pág. 89. Ello apunta a que, al enfrentar dudas en cuanto a la existencia de una controversia real, o cuando hay alegaciones afirmativas que no han sido refutadas, Ramos v. Ortiz Bonet, 139 D.P.R. _ (1995), 95 J.T.S. 18, pág. 651, el tribunal debe resolver en contra del promovente de la sentencia sumaria y a favor de un juicio vivo. Roth v. Lugo, 87 D.P.R. 386, 396 (1963); Valcourt Questell v. Tribunal Superior, 89 D.P.R. 827, 832 (1964). Este acercamiento cauteloso indudablemente, ya sea cuando existe la más leve o mínima duda en cuanto a cuáles son los hechos en controversia, cuánto más cuando realmente existen uno o más hechos materiales que han sido efectivamente controvertidos.
Al momento de considerar su adjudicación, el juzgador de hechos puede y debe considerar todos los documentos obrantes en autos, sean o no parte de la solicitud de sentencia sumaria, de los cuales puedan surgir admisiones hechas por las partes. Medina Morales v. Merck, Sharp & Dohme, 137 D.P.R. _ (1994), 94 J.T.S. 52, págs. 11788-789; Padín v. Rossi, supra, págs. 263-264. De otra parte, aun cuando se ha establecido que para derrotar una moción de sentencia sumaria la parte promovida debe presentar documentos que controviertan los hechos presentados por el promovente, Tello Rivera v. Eastern Airlines, supra, observamos que la norma expuesta no es inflexible, ya que la ausencia de contradeclaraciones juradas y documentos en oposición, por sí sola, no obliga a un tribunal a disponer del caso sumariamente. P.F.Z. Props. Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. _ (1994), 94 J.T.S. 116. Cumple así el tribunal con su deber de analizar los hechos en la forma más favorable a la parte que se opone a que se dicte sentencia sumaria, Méndez Arocho v. El Vocero, 131 D.P.R. _ (1992), 92 J.T.S. 94, pág. 9715, y de evitar la paradoja de convertir la sentencia sumaria en un mecanismo que, a la larga, causa dilación en los procedimientos cuando su concesión indebida resulta en una injusticia o en una revocación de la misma, Roth v. Lugo, supra, pág. 398, lo que, a su vez, incide sobre la más pronta y eficiente resolución de la controversia.
*1065 Es también norma clara que "cuando la disposición del caso gira en tomo a una determinación de intención, los tribunales deben ser especialmente cautelosos en la concesión de una sentencia sumaria, ya que la resolución de esa controversia depende en gran medida de la credibilidad de los testigos, la cual debe ser determinada luego de observar su demeanor en el directo y el contrainterrogatorio". José A. Cuevas Segarra, supra, pág. 191. En armonía con ello, y ampliando el alcance de esa perspectiva, el Tribunal Supremo ha sentenciado que no es aconsejable utilizar el mecanismo procesal de la sentencia sumaria en casos donde hay elementos subjetivos de intención, propósitos mentales o negligencia, o cuando el factor credibilidad sea esencial. Soto v. Hotel Caribe Hilton, 139 D.P.R. _ (1994), 94 J.T.S. 128, pág. 311. (Enfasis nuestro).
-B-
ELPAGARE
El pagaré, siendo, como es, un documento negociable, se rige por las disposiciones aplicables de la Ley Uniforme de Instrumentos Negociables (LIN), ésta según codificada en 19 L.P.R.A. sec. 1 et seq. (1989), la cual forma parte del Código de Comercio y, por tanto, de nuestro derecho mercantil. A tenor, en el ámbito bajo estudio, un documento es todo escrito o papel con el que se comprueba una deuda, por lo que asimismo se puede denominar como un título de crédito. Ahora bien, para que lleve el apelativo "negociable", y en lo que nos es pertinente, un instrumento tal deberá cumplir con los requisitos aplicables señalados en el Art. 354 del cuerpo de reglas que contemplamos, a saber,

"(1) Deberá ser por escrito y firmado por el que lo hiciere o librare;

(2) contendrá la promesa u orden incondicional de pagar una suma cierta en dinero;

(3) será pagadero a la vista, en fecha fija o futura determinable;

(4) será pagadero a la orden o al portador," 19 L.P.R.A. see. 2.
Así, en armonía con lo antes citado, se ha dicho que el documento negociable es, por definición, "un título de circulación destinado a realizar funciones económicas diversas .. cuya característica es crear diversas relaciones jurídicas autónomas que permite que tenedores sucesivos de buena fe adquieran derechos absolutos sobre el documento, independientemente del título que hayan poseído tenedores anteriores". Basilio Santiago Romero, Tratado de instrumentos negociables, Ed. Universitaria U.P.R., 2da. ed., San Juan (1981), págs. 5-6.
El pagaré es una de las dos categorías en las que se clasifican los instrumentos negociables, siendo la otra la letra de cambio, y dentro de las cuales se encuentran las distintas modalidades de éstos, tales como el cheque, el certificado de depósito, los cheques de viajero, los bonos y los giros bancarios. Toda vez que el caso de autos versa sobre el pagaré, a éste y a sus peculiares características nos habremos de circunscribir.
Así, en lo pertinente, el pagaré negociable se define como la promesa incondicional hecha por escrito a una persona por otra, con la firma de ésta, comprometiéndose a pagar una suma cierta en dinero a la orden o al portador, a la presentación, o en fecha fija o en fecha futura determinable. Art. 537, 19 L.P.R.A. sec. 361.
A tenor, si falta alguno de los requisitos aquí señalados, los que provienen de la See. 2, supra, el mismo no podrá ser considerado como negociable, si bien se ha dicho que "no es necesario que [tales requisitos] se expresen en el documento a través de palabras esenciales o invariables, ya que la ley no requiere el uso de palabras sacramentales", Basilio Santiago Romero, supra, pág. 46, "siendo suficiente que esté redactado en términos que claramente indiquen la intención de ajustarse a los requisitos de la misma". Art. 363, 19 L.P.R.A. sec. 11.
Abordando la característica de negociabilidad atinente al requisito de que el pagaré debe ser suscrito "al portador" o "a la orden", la LIN nos indica, en lo pertinente, que:

”[e]l documento será pagadero a la orden cuando se libre a la orden de persona determinada, o a 
*1066
favor de una persona oasu orden, Art. 361, 19 L.P.R.A. sec. 9, y que será pagadero al portador

(1) [cu]ando así se exprese en el mismo;

(2) cuando es pagadero a la persona que en él se nombra o al portador;

(3)...

(4)...

(5) cuando el único o último endoso está en blanco. Art. 362,19 L.P.R.A. sec. 10.
En cuanto a la naturaleza del documento emitido en su origen 'A la orden' o 'Al portador' nos ilustra el tratadista de referencia lo siguiente, con relación a la forma y manera en que ambos documentos se negocian. Mientras que un documento emitido en su origen 'A la orden' puede eventualmente convertirse en uno que se puede convertir en uno 'Al portador', ello en virtud de la precedente sección 10(5) mediante un endoso en blanco, en los casos en que el documento ha sido expedido originalmente 'al portadorA en vez de 'a la orden“ la regla es distinta. Un endoso especial a dicho documento no cambia la naturaleza del mismo y éste se sigue considerando al portador bajo la sección 71 de nuestra ley." Basilio Santiago Romero, supra, pág. 94.
Al tratar de reconciliar tal distinción, y citando al profesor Britton, nos explica Santiago Romero que "La sección 71 se aplica exclusivamente a documentos que fueron expedidos originalmente al portador, mientras que la sección 10(5) [supra] corresponde, también exclusivamente, a documentos expedidos originalmente a la orden, pero que fueron convertidos al portador mediante endosos en blanco". Id. A tenor, una vez expedido al portador, el pagaré así emitido nunca cambia su naturaleza como tal y podrá seguir siendo negociado mediante la entrega. 19 L.P.R.A. sec. 61.
Sobre este último concepto, nos indica Santiago Romero que la entrega es "un requisito esencial para perfeccionar la negociación del documento, ya sea pagadero a la orden o pagadero al portador, [por lo que] sin la entrega no hay contrato entre las partes". Basilio Santiago Romero, supra, pág. 95. Siendo ello así, el Artículo 369 del estatuto bajo estudio provee, en cuanto a los efectos legales y la presunción de la entrega, que:
"[t]odo contrato sobre documento negociable no quedará perfeccionado hasta la entrega del documento con elfin de darle efecto. Entre contratantes directos y en lo que respecta a una parte que no lo fuere y que tampoco sea un tenedor de buena fe, la entrega del documento, para que surta su efecto, deberá hacerse por las partes que lo hicieren, lo libraren, aceptaren o endosaren, según sea el caso, o con su autorización, y en tal caso podrá probarse que la entrega ha sido condicional, o solamente para un fin especial, y no con el propósito de transferir la propiedad de dicho documento. Pero cuando estuviere éste en manos de un tenedor de buena fe, se presumirá, concluyentemente, la entrega válida del mismo por todas las partes a dicho tenedor, de modo que le sean responsables, y cuando el documento no estuviere ya en posesión de persona cuya firma aparezca en el mismo, se presumirá la entrega válida y voluntaria por ella, hasta que se pruebe lo contrario." 19 L.P.R.A. sec. 17.
Surge así, y en lo pertinente, que en casos en que la entrega de un pagaré por su tenedor está necesariamente atada a una condición, la cual puede ser precedente, o sea, que se debe cumplir antes de que se considere perfeccionada tal entrega y que el que lo recibe se pueda considerar su titular, será admisible evidencia tendiente a probar la entrega condicional del documento cuya propiedad pueda estar en disputa, lo que haría revocable tal entrega. Basilio Santiago Romero, supra, pág. 98. El profesor Britton nos ofrece como ejemplo de una situación tal, aquélla en que la persona que se convirtió en el tenedor de un documento negociable mediante la entrega condicional, no cumplió con su promesa de pagar por tal documento el precio acordado. William. E. Britton, supra, pág. 128.
Finalmente, y en lo pertinente, la LIN estatuye las instancias en las que un documento negociable queda cancelado, así como cuándo una cancelación tal no surtirá efecto. A tenor, el Artículo 472 nos *1067 indica que [q]ueda cancelado un documento negociable:

"(1) mediante el pago hecho en debido curso por el deudor principal o a nombre de dicho deudor.

(2) Mediante el pago hecho en debido curso por la persona acomodada, cuando el documento se ha hecho o aceptado en acomodo suyo.

(3) Por la cancelación voluntaria del mismo por el tenedor.

(4) Por cualquier otro acto que sirva para dejar cumplido un contrato simple sobre pago de dinero.

(5)Cuando el deudor principal llegue a ser el tenedor del documento al vencimiento o después del vencimiento, por derecho propio." 19 L.P.R.A. see. 201.
Por su parte, el Artículo 476 provee que la cancelación de un documento negociable en cualquiera de las citadas instancias, "hecha involuntariamente, por equivocación o sin la autorización del tenedor, no surtirá efecto; pero cuando el documento o cualquier firma del mismo apareciere cancelada, el peso de la prueba recaerá sobre la parte que alegue que la cancelación se hizo sin intención, por equivocación o sin autorización". 19 L.P.R.A. see. 205.
Analicemos, a la luz del precedente marco jurídico y jurisprudencial, así como de las circunstancias prevalecientes en el caso que consideramos, la corrección del dictamen emitido por el foro recurrido objeto del recurso presentado ante nuestra consideración.
III
B o a & g*o‘° O » o e ® s o s 00 (6 ® < — *• 6* CD c C CD Sogo. CD 't .o o cr o 3*33 es 4) O ^3 n .12 <2 «i a ¡s 7" o U S3 cu go o " o n ti
Según surge de su escrito al respecto, la demandante-apelante apoyó tal moción en una interpretación errónea del derecho aplicable a su situación. Fue así su argumentación ante el foro de instancia que el pagaré en cuestión, emitido "al portador" en su origen, se convirtió en uno "a la orden" por virtud del endoso especial que a su nombre surge de la faz del mismo. Fue así su contención que para que el pagaré pudiera ser negociado subsiguientemente, se requería que constara su endoso, o en su defecto, que para que el pagaré en cuestión pudiera ser cancelado, el pago tenía que haberle sido hecho a ésta por efecto del referido endoso especial. En cuanto a este extremo debemos aquí señalar que en la primera alternativa contemplada, es ese el derecho vigente en la actualidad en nuestra jurisdicción, mas no lo era para la fecha en que se suscita la controversia que nos ocupa. Según se ha expuesto, la LIN contempla que, una vez emitido al portador, y por virtud de su sección 71, supra, dicho documento no cambia su naturaleza, independientemente de que el mismo sea objeto de endoso, aún uno especial, como lo es el que consideramos en el presente recurso. Es por ello que el pagaré en cuestión pudo haber sido objeto de una subsiguiente negociación sin que la falta del endoso del endosatario especial —en nuestro caso el de la demandante, Sra. Bonilla— incidiera sobre la negociabilidad del pagaré, 19 L.P.R.A. sec. 71, siendo ello así, dictaminó con corrección el foro de instancia al denegar el pronunciamiento sumario a su favor peticionado por la demandante.
Ahora bien, independientemente de lo acertado en derecho del juicio del tribunal de instancia al rechazar la procedencia de una sentencia sumaria a favor de la demandante, ello no implica que el juzgador estaba autorizado u obligado a declarar Con lugar la moción de sentencia sumaria promovida por los demandados.
Dirigiendo nuestra atención al dictamen recurrido, observamos que el tribunal de instancia consignó en su "Sentencia", a la pág. 4, los hechos que determinó como "incontrovertibles", a saber, "(1) que el pagaré por la cantidad de $84,000.00 se encuentra en poder del demandado y (2) que el mismo fue cancelado con el sello perteneciente a la oficina de notario licenciado Rafael Doitteau Cruz", en *1068 función de lo cual, como cuestión de derecho, resolv[ió] "que el pagaré de $84,000.00fue pagado". Al así dictaminar, el juzgador obvió por completo la teoría de la demandante, así como las enmiendas a sus alegaciones al respecto, a los efectos de que a ella le fue entregado el pagaré en cuestión y que ésta, a su vez, alegó una entrega condicionada de dicho documento al co-demandado, don Carmelo, ante la promesa de éste de pagarle el importe de la deuda así evidenciada, y de que tal aseveración fue puesta en controversia por el co-demandado al éste alegar que el pagaré, no le fue entregado por la Sra. Bonilla, sino que le fue entregado por su tomador, Juan de Dios Bonilla Camacho. Dejó así de reconocer el foro recurrido la genuina controversia suscitada entre las partes, la que estriba en el hecho esencial atinente a quién fue la persona que le entregó el documento al co-demandado, don Carmelo, y la intención que había entre las partes cuando se hizo tal "entrega": la parte demandante, Sra. Bonilla, alega que fue ella, quien como tenedora y endosataria del documento en cuestión, lo entregó a dicha parte co-demandada ante su promesa de que éste iba a pagarle la deuda así evidenciada. Por su lado, la parte co-demandada, don Carmelo, alega que fue Juan de Dios, el tomador del documento, quien se lo presentó al cobro y que, aquél, como deudor, le hizo a Juan de Dios, su "acreedor", el pago debido. Obvio resulta que, a tenor del derecho expuesto, los derechos de las partes se hacen depender de la adjudicación que sobre dicho extremo tenga a bien hacer el foro de instancia, controversia que sólo podía ser dilucidada luego de una vista plenaria donde las partes hubiesen tenido la oportunidad de aportar prueba en apoyo a las respectivas contenciones.
De otra parte, es de rigor señalar que de los autos no surge que las partes comparecientes, en sus escritos al tribunal de instancia, alegaran o argumentaran, con claridad y fehacientemente, las circunstancias que mediaron en uno u otro caso, lo que indiscutiblemente hace de este caso uno típico en el que, a tenor de las directrices pautadas por nuestra jurisprudencia y por los comentaristas del derecho procesal civil, se debe optar por un juicio en su fondo, siendo el factor credibilidad uno esencial a su más justiciera resolución en la certera adjudicación de los derechos reclamados y aducidos por las partes comparecientes. Soto v. Hotel Caribe Hilton, supra, pág. 311; José Cuevas Segarra, supra, pág. 191.
Observamos así que, en la presente reclamación en cobro de dinero en la que, de una parte, la demandante, alegada dueña del pagaré, adujo que ella, como tenedora legítima, lo entregó a Don Carmelo "ante el hecho de que éste iba a pagar el mismo y ante la confianza que tenía la demandante en dicho co-demandado por existir una relación de tío-sobrina", siendo luego defraudada al no recibir el pago debido por parte del obligado en las circunstancias antes descritas, y en la que, de otra parte, se alegó por los demandados que dicho obligado, el co-demandado don Carmelo, estaba libre de responsabilidad alguna de pago porque éste advino tenedor del documento luego de alegadamente haber pagado la obligación representada por el pagaré. Quedó así establecida ante la consideración del tribunal de instancia una genuina controversia de hechos para cuya dilucidación se requería una vista plenaria. Evidente nos resulta que, en tales circunstancias, no tenía el foro de instancia ante sí la totalidad de hechos pertinentes incuestionados que hicieran procedente, como cuestión de derecho, la utilización de tal vehículo procesal para adjudicar, en sus méritos, tal reclamación de la demandante.
Huelga decir que en la final resolución del extremo aquí considerado de la controversia suscitada entre las partes comparecientes, el juzgador de hechos vendrá obligado a ponderar, serena y desapasionadamente, ello a tenor del derecho aquí expuesto y del descargo de prueba que le corresponde a cada parte en virtud del derecho sustantivo aplicable y de nuestro cuerpo de reglas evidenciario, así como de las presunciones que ambos establecen, la prueba que tengan a bien aportar los litigantes en apoyo a sus respectivas contenciones, luego de lo cual decidirá, cuando tenga ante sí la verdad de todos los hechos pertinentes. Tello Rivera v. Eastern Airlines, supra; Padín v. Rossi, supra.
Recapitulando. Toda vez que el pagaré en el caso que nos ocupa fue expedido originalmente al portador, éste no cambió su naturaleza como tal mediante el endoso especial hecho a favor de la demandante. Siendo ello así podía seguir siendo negociado mediante la entrega, por lo que la falta de endoso de la demandante no tiene el efecto que ésta le pretende atribuir. Con este limitado alcance, dictaminó con corrección el foro de instancia al denegar la moción de sentencia sumaria a su favor peticionada por la demandante. De otra parte, al acoger con aprobación aquélla promovida por los demandados, dicho foro no sólo dejó de advertir una genuina controversia de hechos, lo cual por sí mismo excluía la utilización del vehículo procesal de sentencia sumaria para disponer de la *1069 reclamación ante su consideración, sino que dejó de establecer, como cuestión de hecho, una determinación vital a la adjudicación de los derechos de las partes, cual es señalar, indubitadamente, quién fue la persona que efectivamente entregó el pagaré en cuestión al co-demandado, don Carmelo, y las circunstancias que mediaron en y propiciaron la misma. Ante esta realidad, su dictamen declarando "Con Lugar" la moción de sentencia sumaria de los co-demandados no puede prevalecer y el mismo debe ser revocado.
IV
Por los fundamentos antes expuestos, se expide el auto de certiorari peticionado para revocar el dictamen recurrido y se devuelve el caso al tribunal de instancia para la continuación de los procedimientos de forma consistente con lo antes dispuesto.
Lo acuerda y manda el Tribunal y así lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General